**NEW EL REY SAUSAGE COMPANY, INC., Petitioner,**

**v.**

**U.S. IMMIGRATION AND NATURALI-ZATION SERVICE, Respondent.**

Nos. 89–70349, 88100080.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1990.

Decided Feb. 7, 1991.

**1154**

Alex Jacinto, Los Angeles, Cal., for petitioner.

Karen L. Fletcher, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for respondent.

Nancy S. Cowen, Mexican American Legal Defense & Educational Fund, Los Angeles, Cal., for amicus curiae.

Before NORRIS, HALL and RYMER, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

New El Rey Sausage Co. ("New El Rey") petitions for review of an order of the Chief Administrative Hearing Officer ("CAHO") affirming an Administrative Law Judge's ("ALJ") decision that New El Rey knowingly continued to employ unauthorized aliens in violation of the Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. No. 99–603, 100 Stat. 3359 (1986). We have jurisdiction under 8 U.S.C. § 1324a(e)(8) and we affirm.

I

IRCA imposed a major change in immigration law by placing part of the burden of enforcement on employers. The statute set up an employment verification system under which the employer must execute a form ("I–9") attesting, under penalty of perjury, that it has verified that each employee is not an unauthorized alien. 8 U.S.C. § 1324a(b) (1986). Under IRCA it is unlawful for an employer knowingly to hire an alien who is unauthorized to be employed in the United States, or to continue to employ an alien with the knowledge that his employment is unauthorized. *Id.* § 1324a(a)(1), (2).

Congress provided for gradual implementation of IRCA. Following an initial six-month public information period, the statute called for a twelve-month "citation period." *Id.* § 1324a(i)(2). During that period, "in the first instance in which the [INS] has reason to believe that the person or entity may have violated [IRCA] ... the [INS] shall provide a citation to the person or entity indicating that such a violation or violations may have occurred and shall not conduct any proceeding, nor issue any order, under this section on the basis of such alleged violation or violations." *Id.* The citation period ended on May 31, 1988.

On March 16, 1988, INS Special Agent Brian Cecil telephoned New El Rey and informed management about the requirements of IRCA, including employer duties both to verify employees' authorization to work and to fill out I–9 forms. A few days later, the INS issued a "notice of inspection" to New El Rey's owner, Laura Balverde Sanchez, informing her that Agent Cecil would inspect New El Rey's I–9 forms and discuss IRCA's requirements with her on April 1, 1988. The INS enclosed blank I–9 forms and the INS Employer Handbook.

Having found paperwork deficiencies at the scheduled inspection, Agent Cecil performed computer checks on the Central

Index System and found that the alien registration numbers provided by New El Rey for nine employees were either nonexistent or had been issued to someone else. On May 25, 1988, Agent Cecil hand-delivered to Sanchez a letter stating in part:

> This letter is to inform you that, according to the records of the United States Immigration and Naturalization Service, the alien registration cards submitted to you were found to pertain to other individuals, or there was no record of the alien registration number being issued. Unless these individuals can provide valid employment authorization from the United States Immigration and Naturalization Service, they are to be considered unauthorized aliens, and are therefore not authorized to be employed in the United States. Their continued employment could result in fine proceedings....

Agent Cecil explained the letter to Sanchez and told her that "[y]our people on this list do not have valid employment authorization. You're exposing your company to potential fines by not ... acting on the information that you've got here."

Sanchez instructed one of her employees to ask the listed employees if their documents were valid. Seven of the employees had either left New El Rey prior to May 25, or left after being informed of the letter. But employees Martin Campos–Vasquez and Rigoberto Gutierrez–Guzman insisted they were authorized. Sanchez accepted their word and, although she reviewed her copies of their I–9 forms, she did not ask to see their authorization cards or any other documents.

On June 15, 1988, the INS obtained a district court order to search New El Rey's facility and its employment records. During the search on June 22, 1988, the agents found payroll records that reflected Guzman's and Vasquez's continued employ-

ment.[1] The INS filed a complaint against New El Rey, charging it with two counts of knowingly continuing to employ unauthorized aliens in violation of 8 U.S.C. § 1324a(a)(2) and two counts of paperwork deficiencies regarding those two employees in violation of 8 U.S.C. § 1324a(b).

The ALJ dismissed the paperwork counts, holding that the INS had been required under section 1324a(i)(2) to issue a citation as soon as it realized due to its April 1 audit that New El Rey had violated the paperwork requirements. The ALJ found New El Rey guilty, however, of the two counts of violating section 1324a(a)(2) and imposed fines totaling $1,250. The judge determined that the INS had not been required to issue a citation for the section 1324a(a)(2) violations since it did not have sufficiently conclusive facts prior to the end of the citation period on May 31, 1988. The CAHO affirmed the ALJ's decision on all four counts.[2] New El Rey timely appealed the CAHO's holding.

## II

The CAHO's findings of fact may be overturned only where they are not supported by substantial evidence. *Mester Mfg. Co. v. I.N.S.*, 879 F.2d 561, 565 (9th Cir.1989). An agency's conclusions of law are reviewed de novo. *Id.* Although we retain final authority over questions of statutory construction, an agency's interpretation of a statute is given deference if it is reasonable and consistent with congressional intent. *Id.*

## III

The first issue is whether the INS's failure to issue a citation to New El Rey for its violations of section 1324a(a)(2) precluded the Service from commencing an enforce-

---

1. Guzman was arrested and later found to be deportable. Although Vasquez was not present at the time of the search, New El Rey's records indicated that he had been employed until at least June 17.

2. The CAHO reversed the ALJ's holding that 8 C.F.R. § 274a.9(c) ("If after investigation the Service determines that a person or entity has

violated section 264A of the Act for the first time during the citation period ... the Service shall issue a citation.") was inconsistent with 8 U.S.C. § 1324a(i)(2). Since the CAHO upheld the ALJ's decision that the actions of the INS satisfied the language of the statute, and we agree, we need not decide whether the statute and the regulations are inconsistent.

ment action. New El Rey argues that prior to the end of the citation period on May 31, 1988 the INS had "reason to believe that [New El Rey] may have violated" section 1324a(a)(2) and therefore was obligated under section 1324a(i)(2) to issue a citation. According to New El Rey, the failure to issue a citation prevented the INS from later initiating enforcement proceedings for the same violation.[3]

But the CAHO and the ALJ agreed with the INS's position that the Service did not have "reason to believe" until after the citation period had come to an end.[4] Once the citation period was over, section 1324a(i)(2) no longer applied; the INS was not required to issue a citation and was free to commence enforcement proceedings.

We therefore address at what point the INS had reason to believe that a violation may have occurred. In order to be in violation of section 1324a(a)(2), an employer must "continue to employ the alien in the United States knowing the alien is (or has become) an unauthorized alien with respect to such employment." In *Mester*, we explained that this language meant that the immediate issuance of a citation by the INS upon discovery that an employee was unauthorized was not necessarily appropriate. Until Mester was told by the INS that his company was employing unauthorized aliens, the knowledge element of section 1324a(a)(2) was not present. Therefore, even though the INS knew Mester was employing unauthorized aliens, the offenses were not ripe and thus not citable. 879 F.2d at 570.

■ New El Rey therefore was in violation only if it continued to employ unauthorized workers *after* learning that they were unauthorized. While all parties agree that

by May 25, 1988 the INS had reason to believe that New El Rey employed unauthorized workers, there was no evidence that New El Rey was doing so knowingly. In fact, the record indicates that Guzman and Vasquez presented New El Rey with false documentation. Prior to May 25, the INS had no reason to believe that New El Rey might be acting in violation of the statute.

On May 25, New El Rey learned from the INS letter that it was employing unauthorized workers. But the statute requires that the employer knowingly *continue* to employ unauthorized workers. The INS did not know whether New El Rey, after receiving the May 25 notice, continued to employ the workers until the INS next checked New El Rey's records on June 22, 1988. By this time, the citation period had ended.

Arguably the INS had reason to believe between May 25 and May 31 that New El Rey might have been in violation of the statute, and thus should have issued a citation. In *Mester*, however, we held that the INS must provide an employer with a reasonable amount of time for compliance after the employer acquires knowledge that an employee is unauthorized. 879 F.2d at 567. Noting that "the text of the statute would not prohibit an INS agent from informing Mester at 11:55 a.m. that one of its employees was unauthorized, issuing an NIF [Notice of Intent to Fine] at 12:00 noon, and seeking sanctions for this five-minute 'continued knowing employment,'" we held that IRCA must be interpreted to avoid "unjust or capricious action." *Id.*

The INS had reason to believe between May 25 and May 31 that New El Rey might be in violation only if it was reasonable to expect compliance that quickly. New El

---

**3.** New El Rey appears to be correct that if a citation were required, the INS was precluded from commencing an enforcement action. Section 1324a(i)(2) states that the INS "shall provide a citation ... indicating that such a violation or violations may have occurred and shall not conduct any proceeding, nor issue any order, under this section on the basis of such alleged violation or violations."

**4.** The CAHO quoted and affirmed the ALJ's finding that:

"the factual allegations pertaining to Counts I and II which, while initially being investigated prior to May 31, 1988, were not sufficiently conclusive to warrant any kind of prosecution, including the issuance of a citation, until after May 31, 1988, when these same factual allegations were developed further by subsequent investigation."

Rey is arguing, in effect, that its failure to comply within six days violated section 1324a(a)(2). Since the INS had reason to believe that this might have happened, a citation should have issued. We suspect that had the citation period ended prior to May 25, New El Rey would be less willing to conclude that six days is sufficient time for compliance.[5] In fact, Amicus Mexican–American Legal Defense Fund ("MALDEF") argues that a rule requiring immediate termination or suspension of employees is constitutionally infirm. It points out that "[r]egulations implementing IRCA ... recognize that individuals may need up to 21 business days to secure acceptable documents." Amicus Curiae at 15, *citing* 8 CFR § 274a.2(b)(vi).

The steps taken by the INS support the conclusion that New El Rey was given more than six days to comply. Rather than ordering New El Rey to immediately terminate the aliens, the INS told New El Rey that "unless these individuals can provide valid employment authorization," they were to be considered unauthorized. This statement implied that New El Rey had a reasonable period of time to determine whether the suspected employees had valid employment authorization. In addition, rather than commencing proceedings immediately after the citation period ended, the INS did not seek a warrant until June 15, and did not conduct its inspection until June 22.

■ We therefore refuse to hold that New El Rey was in violation when it failed to comply with the May 25 letter in the six days prior to the end of the citation period.[6] Since New El Rey still had time to comply,

the INS had no reason to believe that New El Rey might be in violation. Thus, the ALJ was correct in concluding that the INS was not required to issue a citation for the violations of section 1324a(a)(2).

## IV

New El Rey next challenges the holding that it violated section 1324a(a)(2). New El Rey's argument is two-fold. First, it claims that the ALJ and the CAHO applied the wrong legal standards in concluding that New El Rey violated IRCA. Second, it argues that the facts of the case demonstrate that it did not violate the statute. We address each contention in turn.

## A

New El Rey argues that the ALJ and the CAHO committed two legal errors in construing section 1324a(a)(2). First, the ALJ and the CAHO concluded that although New El Rey did not have actual knowledge of its workers' unauthorized status, it had constructive knowledge. According to New El Rey, a constructive knowledge standard is not authorized by the statute, and removes the INS's burden of proving that an alien is unauthorized.

The constructive knowledge standard was adopted by this circuit in *Mester.* 879 F.2d at 567; *see also, Maka v. INS,* 904 F.2d 1351, 1359 (9th Cir.1990). *Mester* analogized the situation faced by an employer to that found in *United States v. Jewell,* 532 F.2d 697 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188

---

5. Even during the citation period, IRCA permitted the INS to initiate an enforcement action if the employer continued to employ the unauthorized alien after receiving the citation. *See* H.R. Rep. No. 682, 99th Cong., 2d Sess., Part I, 58, *reprinted in* 1986 U.S.Code Cong. & Admin. News 5649, 5662 ("[E]ven during the 12–month citation period, a civil fine will lie once the citation has been issued.")

Arguably, New El Rey might have been worse off if the INS had acted in the manner that New El Rey now says was required. The INS would have issued a citation within days of the May 25 warning. If New El Rey had not acted immediately, the INS could then have initiated an en-

forcement action, even before the end of May. Instead, the INS waited three weeks, until June 15, before it took any action.

6. We decline, however, to lay down a blanket rule that all employers have at least six days to comply. We agree with *Mester's* conclusion that "an inquiry into a reasonable time frame for termination will include consideration, in certain cases, of factors other than the number of days alone—such as the certainty of the information providing the knowledge of unauthorized status, and steps taken by the employer to confirm it." 879 F.2d at 568 n. 9.

(1976), where in criminal law, a deliberate failure to investigate suspicious circumstances imputes knowledge. We believe that this analogy is well taken.

■ Contrary to the argument of New El Rey that the government has the entire burden of proving or disproving that a person is unauthorized to work, IRCA clearly placed part of that burden on employers. The inclusion in the statute of section 1324a(b)'s verification system demonstrates that employers, far from being allowed to employ anyone except those whom the government had shown to be unauthorized, have an affirmative duty to determine that their employees are authorized. This verification is done through the inspection of documents. Notice that these documents are incorrect places the employer in the position it would have been if the alien had failed to produce the documents in the first place: it has failed to adequately ensure that the alien is authorized.[7]

■ While the INS cannot make generalized accusations for the purpose of forcing employers to reverify the authorization of their employees, that is not what occurred here. New El Rey was provided with specific, detailed information. The INS told it whom it considered unauthorized and why. Under these circumstances the ALJ properly found that a constructive notice standard was appropriate.[8] *See Mester,* 879 F.2d at

566 (Employer violated IRCA's continuing-to-employ prohibition when INS made a prima facie showing that an employee's authorization was false and employer failed to produce any evidence to the contrary.)

The second alleged error is that the ALJ found New El Rey liable due to the company's failure to take certain steps that New El Rey contends were not contemplated by the statute and are unconstitutional. Amicus MALDEF also argues strenuously that the ALJ erred by requiring that New El Rey either terminate or suspend its employees upon receipt of the notice from the INS. According to both New El Rey and MALDEF, such a rule is constitutionally infirm.

We agree that a rule requiring immediate suspension or termination is problematic. In fact, even the INS concedes that "so long as the employer investigates the situation in a timely way, there seems to be no reason for an employer to suspend the worker during the investigation." But although the ALJ suggested that suspension would be "appropriate,"[9] New El Rey's failure to take this step did not provide the basis for the ALJ's decision. Instead, the ALJ found that New El Rey's failure "in good faith to acquire *some* additionally independent and more 'specific' corroboration of Vasquez' and Guzman's obviously self-serving representations" made its acts unreasonable.[10] Thus, we need not decide

---

**7.** According to 8 CFR § 274a.2(b)(vii), if an employee's authorization expires, the employer must update the employee's I-9 form. To do this, the employee must present further documentation which the employer must review. This regulation is analogous to the situation here, where rather than the verification expiring, it was found to be invalid.

Although compliance with the paperwork procedures establishes a good faith defense against a finding of unlawful hiring, 8 U.S.C. § 1324a(a)(3), it should provide no defense against a violation of section 1324a(a)(2). While the hiring can be considered in good faith since the false nature of the documents was unknown, the continuing employment is done with the knowledge that the document is false.

**8.** *See* H.R.Rep. No. 682, 99th Cong., 2d Sess., Part I, 57, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5649, 5661 ("The Committee does

not intend to impose a continuing verification obligation on employers. However, if an employer has knowledge that an alien's employment becomes unauthorized due to a change in nonimmigrant status, or that the alien has fallen out of status for which work permission is authorized, sanctions would apply.").

**9.** The ALJ did not suggest that immediate termination would be appropriate. Instead it suggested that if the employees in question refused to apply for confirmation of their work authorization, *then* the employer could conclusively infer that the employees did not have proper authorization and should terminate them.

**10.** The ALJ listed several steps that New El Rey could have taken, including asking for other documentation, contacting a lawyer, or recontacting the INS.

whether immediate suspension is ever appropriate and, if so, when.

## B

New El Rey also argues that even if the ALJ applied the correct legal standard, given the facts of this case it should not have concluded that New El Rey acted in violation of the statute. First, New El Rey argues that the INS warnings were so conditional and ambiguous that it had no reason to believe that its employees were unauthorized. We believe, however, that the ALJ's conclusion that New El Rey had constructive knowledge is supported by substantial evidence. The May 25 letter clearly explained to New El Rey which employees were considered unauthorized and why the INS had reached that conclusion. It specifically told the company that "[u]nless these individuals can provide valid employment authorization ... they are to be considered unauthorized aliens." Agent Cecil was even more explicit, telling Sanchez that "[y]our people on this list do not have valid employment authorization." The ALJ questioned Sanchez about this information, and concluded that it had provided her with constructive knowledge. This finding is correct.

New El Rey counters that even if it had knowledge that its employees were unauthorized, the INS failed to provide it with sufficient information about what steps it should take to comply with the statute. While specific directions from the INS would have been helpful, we do not believe they were necessary. The letter clearly told New El Rey that since the documents the employees had provided were invalid, the listed employees had to provide other documentation.

More importantly, contrary to New El Rey's claim, the specific steps listed by the ALJ were not required for compliance—they were merely suggestions of things New El Rey could have done to comply. New El Rey is not being fined for its failure to take specific required steps, but for its failure to take *any* steps sufficient to demonstrate a good faith attempt to comply with the statute.

Finally, New El Rey's argument that it took sufficient steps to investigate its employees' status is meritless. In response to the INS letter insisting that the employees "provide valid employment authorization," New El Rey merely asked its employees whether their cards were valid. Once Guzman and Vasquez said yes, New El Rey relied on their self-serving statements without requiring anything further from the employees, apparently assuming that the INS must have made a mistake. Yet it failed to contact the INS to tell it of the discrepancy. As *Mester* demonstrates, mere reliance on an assumption that the INS has erred is not sufficient to satisfy section 1324a(a)(2). *See* 879 F.2d at 567–68.

AFFIRMED.