**COLLINS FOODS INTERNATIONAL, INC., Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 90–70101.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1991.

Decided Oct. 29, 1991.

---

Jon E. Pettibone, Lewis and Roca, Phoenix, Ariz., for petitioner.

Karen L. Fletcher, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before CHOY, GOODWIN and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Collins Foods International[1] appeals from the decision of an Administrative Law Judge (ALJ)[2] holding Collins Foods subject to a civil penalty for hiring an alien, knowing him to be unauthorized to work in the United States, in violation of 8 U.S.C. § 1324a(a)(1)(A).[3] The ALJ found that Collins Foods had constructive knowledge of the alien's status, and that this constructive knowledge was sufficient to establish the knowledge element of section 1324a(a)(1).

We reverse.

## FACTS

Ricardo Soto Gomez (Soto), an employee at a Phoenix Sizzler Restaurant, is authorized to hire other Sizzler employees for that location. Soto extended a job offer to Armando Rodriguez in a long-distance telephone conversation; Soto was in Phoenix and Rodriguez was in California. Rodriguez said nothing in the telephone conversation to indicate that he was not authorized to work in the United States. Rodriguez was working for Sizzler in California at the time Soto extended the offer of employment in Phoenix.

When Rodriguez came to Phoenix, he reported to Sizzler for work. Before allowing Rodriguez to begin work, Soto asked Rodriguez for evidence of his authorization to work in the United States. Rodriguez informed Soto that he did not have the necessary identification with him. At that point, Soto did not let Rodriguez begin work, but sent him away with the understanding that he would return with his qualifying documents.

Rodriguez returned with a driver's license and what appeared to be a Social Security card. Soto looked at the face of

---

1. Collins Foods was doing business as Sizzler Restaurant.

2. The decision of the ALJ was approved without comment by the Chief Administrative Hearing Officer and the Attorney General did not vacate or modify the decision. The ALJ's decision therefore became the final agency action. 8 U.S.C. § 1324a(e)(7). Collins Foods appeals pursuant to 8 U.S.C. § 1324a(e)(8).

3. Section 1324a(a)(1) provides:

> It is unlawful for a person or other entity—
> (A) to hire ... for employment in the United States an alien knowing the alien is an unauthorized alien ... with respect to such employment....

the documents and copied information from them onto a Form I–9.[4] Soto did not look at the back of the Social Security card, nor did he compare it with the example in the INS handbook. After Soto completed the necessary paperwork, Rodriguez began work at the Sizzler in Phoenix. Rodriguez, it turned out, was an alien not authorized to work in the United States, and his "Social Security card" was a forgery.

## DISCUSSION

■ The INS charged Collins Foods with one count of hiring an alien, knowing him to be unauthorized to work in the United States, in violation of 8 U.S.C. § 1324a(a)(1)(A). Upon receiving INS' Notice of Intent to Fine, Collins Foods requested a hearing. Inasmuch as it was uncontroverted that Rodriguez was unauthorized to work in the United States, the only issue to be decided at the hearing was whether Collins Foods knew that Rodriguez was unauthorized at the time of hire. The ALJ declined to decide that Collins Foods had actual knowledge of the fact that Rodriguez was an illegal alien,[5] but decided instead that it had "constructive knowledge." The ALJ based his "constructive knowledge" conclusion on two facts:[6] first, that Soto offered the job to Rodri-

guez over the telephone without having seen Rodriguez' documentation; and, second, that Soto failed to compare the back of the Social Security card with the example in the INS manual.[7] While we do not disturb the factual determinations made by the ALJ, we hold that these two facts cannot, as a matter of law, establish constructive knowledge under 8 U.S.C. § 1324a(a)(1)(A).

### I. *Job Offer Prior to Verification of Documents*

■ The first of these facts, as a matter of law, cannot support a finding of constructive knowledge. Nothing in the statute prohibits the offering of a job prior to checking the documents; indeed, the regulations contemplate just such a course of action.

The statute that Collins Foods is charged with violating prohibits "a person or other entity [from] hir[ing] for employment" an alien not authorized to work. 8 U.S.C. § 1324a(a)(1)(A). The Regulations define "hiring" as "the actual commencement of employment of an employee for wages or other remuneration." 8 C.F.R. § 274a.1(c). As Rodriguez had not commenced employment for wages at the time Soto extended a job offer to him over the telephone, Rodri-

4. A Form I–9 is an INS Employment Eligibility Verification Form.

5. Because the ALJ's decision was based on a finding of constructive knowledge, we will not review his actual knowledge determination. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based"); *Railway Labor Executives' Ass'n v. ICC*, 784 F.2d 959, 969 (9th Cir.1986).

6. The INS argues that the ALJ's constructive knowledge finding was based on these two facts and other circumstantial evidence presented during the hearing. The plain language contained in the ALJ's order defeats this argument:

I reach this [constructive knowledge] decision by taking Soto at his word, as it is given in his testimony, on two issues. One, that Soto *promised* a job to Rodriguez *before* Soto had an opportunity to examine properly Rodriguez' documents or to form any *reasonable belief* that said documents were genuine. And

two, that at the time Soto was presented with Rodriguez' documents, despite Rodriguez' delay in producing his Social Security card, Soto accepted the documents as genuine *without* questioning or in fact examining them.

7. The ALJ determined that a look at the back of the Social Security card would not necessarily have revealed its lack of authenticity, but that a comparison of the language on the back of the card to that on the back of the example in the INS handbook would have. The ALJ stated:

At a glance, the face of the card might not necessarily appear to be false. Both the genuine and the false card have large letters reading "SOCIAL SECURITY" across the top ...

Nonetheless, more than a glance is required by the legislation. The card must appear reasonably to be valid. Had Soto taken the time to make a comparison, he would have found that the printing on the reverse side of the card did not contain all of the language found on the Social Security card example provided in the INS Handbook. He further would have found that every Social Security card is considered void if laminated.

guez was not yet "hired" for purposes of section 1324a. Soto was therefore not required to verify Rodriguez' documentation at that time.

Another regulation addresses the issue of the timeliness of verification, and it suggests the same result. Under 8 C.F.R. § 274a.2(b)(ii), employers are required to examine an employee's documentation and complete Form I–9 "within three business days of the hire." [8] Because Soto had examined Rodriguez' documents and completed the necessary paperwork by the time Rodriguez began work for wages, Soto was not delinquent in verifying Rodriguez' documentation.

There are additional, highly cogent reasons for rejecting the ALJ's reliance on the fact that Soto "told Rodriguez he would be hired long before Soto ever saw, or had any opportunity to verify, *any* evidence of Rodriguez' work authorization." To hold such a failure of early verification against the employer, as the ALJ did, places the employer in an impossible position. Pre-employment questioning concerning the applicant's national origin, race or citizenship exposes the employer to charges of discrimination if he does not hire that applicant. The Equal Employment Opportunity Commission has held that pre-employment inquiries concerning a job applicant's race, color, religion, national origin, or citizenship status "may constitute evidence of discrimination prohibited by Title VII." EEOC, *Pre–Employment Inquiries* (1981), *reprinted in* 2 Employment Practices Guide ¶ 4120, 4163 (CCH 1985). An employer who makes such inquiries will have the burden of proving that the answers to such inquiries "are not used in making hiring and placement decisions in a discriminatory manner prohibited by law." *Id.* ¶ 4120 at 4166. For that reason, employers attempting to comply with the Immigration Reform and Control Act of 1986 ("IRCA"), are well advised not to examine documents until after an offer of employment is made:

WARNING

Although the law does not prevent an employer from reviewing the documents and completing the Form I–9 prior to the first day of work, prudent employers will delay the process until at least after extending an offer of employment. This will prevent a job applicant who is rejected for employment after having shown his or her documentation which may contain age, and in some cases, national origin information, from using the verification process to claim discrimination under Title VII of the Civil Rights Act of 1964 or under the unfair immigration-related employment practice provisions contained in [IRCA].

Hope M. Frye and H. Ronald Klasko, 1 *Employers' Immigration Compliance Guide* § 3.03(3) at 3–24 (1991).

The ultimate danger, of course, is that many employers, faced with conflicting commands from the EEOC and the INS, would simply avoid interviewing any applicant whose appearance suggests alienage. The resulting discrimination against citizens and authorized aliens would frustrate the intent of Congress embodied in both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the 1986 Immigration Reform Act itself. We discuss below some of the legislative history of the latter Act. The legislative history cannot be squared with the ruling of the ALJ regarding Soto's telephone offer of employment to Rodriguez.

Soto complied with the statute and regulations, and followed the course of action recommended by the EEOC, in waiting until the day Rodriguez began work to verify Rodriguez' authorization to work and to complete the Form I–9. Soto's offer of employment prior to that verification cannot serve to establish that Collins Foods had constructive knowledge of Rodriguez' unauthorized work status.

II. *Verification of Documents*

The portion of the statute that Collins Foods allegedly violated prohibits the hiring of an alien while "knowing" the alien is

---

8. In the Supplementary Information to the regulations, INS states that "the Service wishes to stress that verification may be completed either at the time of an individual's acceptance of an offer of employment or at the time employment actually commences." 52 Fed.Reg. 16216, 16218 (May 1, 1987).

not authorized to work. 8 U.S.C. § 1324a(a)(1)(A). The statute also prohibits the hiring of an individual without complying with the verification requirements outlined in the statute at section 1324a(b)(1)(A). 8 U.S.C. § 1324a(a)(1)(B)(i). These two actions, failing properly to verify an employee's work-authorization documents, and hiring an alien knowing him to be unauthorized to work, constitute separate offenses under the IRCA.[9] Nevertheless, the INS argues, and the ALJ held, that Collins Foods' failure to comply with the verification provisions of the statute establishes the knowledge element of subsection (a)(1)(A), hiring an alien knowing him to be unauthorized.[10] We need not decide, however, whether a violation of the verification requirement establishes the knowledge element of section (a)(1)(A); Collins Foods complied with the verification requirement.[11]

The statute, at 8 U.S.C. § 1324a(b)(1)(A), provides that an employer will have satisfied its verification obligation by examining a document which "reasonably appears on its face to be genuine." Soto examined the face of both Rodriguez' false Social Security card [12] and his genuine driver's license,[13] but failed to detect that the Social Security card was invalid. But as the ALJ acknowledged, even though Rodriguez was spelled "Rodri*q*uez" on the front of the social security card, at a glance the card on its face did not appear to be false.

Although the verification requirement of the statute requires only that the document "reasonably appear[ ] on its face to be genuine," *id.*, the ALJ held that Collins Foods did not satisfy its verification obligation because Soto did not compare the back of Rodriguez' social security card with the

---

9. The two provisions under 8 U.S.C. § 1324a(1) are not completely distinct. The statute provides in section 1324a(a)(3) that a person who has complied in good faith with the verification requirements has established an affirmative defense to the violation contained in paragraph (a)(1)(A), knowingly hiring an unauthorized alien. The House Judiciary Committee Report states, however, that the affirmative defense of good faith raises only a rebuttable presumption. H.R.Rep. No. 99–682 (Part 1), 99 Cong.2d Sess. 56–57 (1986). The presumption is rebutted if the INS can establish, *inter alia,* that the documents did not reasonably appear on their face to be genuine. *Id.* at 57.

Collins Foods argues that it established the affirmative defense because Soto's inspection of Rodriguez' documents was in good faith compliance with the verification requirements. On the other hand, the INS argues that Collins Foods failed to establish the good-faith affirmative defense because Soto's inspection of Rodriguez' documents was inadequate under the statute. INS' argument attempting to rebut or defeat Collins Foods' affirmative defense is the same argument it advances to prove its case in chief: Soto's inspection of the documents was inadequate; had Soto's inspection of the documents been adequate it would have revealed that Rodriguez' social security card was invalid; thus Soto should have known that Rodriguez was unauthorized to work in the United States.

We need not here attempt to untangle the defenses and the rebuttable presumptions advanced by the parties. Our holding, that Collins Foods' inspection of Rodriguez' documents was adequate, makes that task unnecessary.

10. Collins Foods raises, and argues against, an alternative interpretation of the ALJ's holding: that Collins Foods complied with the verification provisions of the statute, but that something more is required under subsection (a)(1)(A) to defeat an allegation of knowingly hiring an unauthorized alien. We find this proposition untenable. An employer's verification obligation is described in subsection (b)(1)(A). This section is cross-referenced in both (a)(1)(B), the subsection making failure to properly comply with the verification requirements unlawful, and (a)(3), the subsection establishing an affirmative defense to a charge of hiring an alien knowing him to be unauthorized. The statute, therefore, establishes that a verification found adequate under (b)(1)(A) is adequate for purposes of avoiding liability under subsections (a)(1)(A) and (a)(1)(B).

11. Although an employer may still be found in violation of subsection (a)(1)(A), knowingly hiring an unauthorized alien, when he has complied with the verification requirements, such a finding would require other evidence of the employer's knowledge. Here, however, the ALJ's constructive knowledge finding rested on a factual finding that Collins' verification was inadequate.

12. The statute includes social security cards in its list of documents that "evidenc[e] employment authorization." 8 U.S.C. § 1324a(b)(1)(C)(i).

13. The statute lists a driver's license as a document that "establish[es] identity of individual." 8 U.S.C. § 1324a(b)(1)(D)(i).

example in the INS handbook. We can find nothing in the statute that requires such a comparison. Moreover, even if Soto had compared the card with the example, he still may not have been able to discern that the card was not genuine. The handbook contains but one example of a Social Security card, when numerous versions exist.[14] The card Rodriguez presented was not so different from the example that it necessarily would have alerted a reasonable person to its falsity.[15] Collins Foods, through its employee Soto, did all that it was required to do by statute to satisfy its verification obligation.

Moreover, the legislative history of section 1324a indicates that Congress intended to minimize the burden and the risk placed on the employer in the verification process. The Judiciary Committee Report on the statute shows that Congress did not intend the statute to cause employers to become experts in identifying and examining a prospective employee's employment authorization documents. The Judiciary Committee Report states that "[i]t is not expected that employers ascertain the legitimacy of documents presented during the verification process." H.R.Rep. No. 99–682 (Part 1), 99 Cong.2d Sess. 61 (1986). The Report goes on to say that "[t]he 'reasonable man' standard is to be used in implementing this provision and the Committee wishes to emphasize that documents that reasonably appear to be genuine should be accepted by employers without requiring further investigation of those documents." [16] *Id.* at 62. The primary enforcement threat in the legislation is directed at the unauthorized alien presenting the false documentation; the statute provides criminal penalties against that party. *Id.*

Congress carefully crafted section 1324a to limit the burden and the risk placed on employers. The ALJ's holding in this case places on employers a verification obligation greater than that intended by Congress and beyond that outlined in the narrowly-drawn statute.

In addition, the ALJ's holding extends the constructive knowledge doctrine far beyond its permissible application in IRCA employer sanction cases. IRCA, as we have pointed out, is delicately balanced to serve the goal of preventing unauthorized alien employment while avoiding discrimination against citizens and authorized aliens. The doctrine of constructive knowl-

**14.** In fact, there are 16 valid versions of the Social Security card *currently in circulation.* General Accounting Office, *Immigration Control: A New Role for the Social Security Card,* 11, 15 (Mar.1988). The GAO points to this failure to include all versions of acceptable documents to substantiate its finding that employers are not in a position to verify documents, and the GAO specifically notes the inadequacy of the *Handbook's* "information on the characteristics or security features of acceptable documents." *Id.* at 14, 15. To require a match of a document with the example included in the *Handbook* would result in employers excluding many individuals authorized to work.

**15.** Also unpersuasive is the ALJ's comment that Soto should have known the Social Security card was not genuine because it was laminated. The information that Social Security cards are invalid if laminated is rather obscurely presented: it is found on the reverse side of the example in the INS handbook.

**16.** Commentators who have addressed the employer's duty to review employment authorization documents under the IRCA have concluded that the employer's duty does not include a rigorous inspection but only a verification that documents were examined and appeared reasonable on their face. National Lawyers Guild, *Immigration Law & Defense,* § 12.2 at 12–6, § 12.3(c) at 12–23 (1988) ("In view of the limited authority to inquire into the employee's documentation, and of the availability of the good faith verification defense, it seemed reasonable to assume that the government would be required to establish the employer's actual awareness of the employee's unlawful status rather than rely on the employer's duty to inquire more fully; ... The *House Judiciary Report* indicated that documents that reasonably appear to be genuine should be accepted by employers without requiring further investigation.... Thus, employers do not have to become proficient in ascertaining documentary fraud and should not, for example, exercise the type of scrutiny that alcoholic beverage license vendors must use in checking identification of minors."); Nancy Jo Merritt, *The Immigration Reform & Control Act of 1986: What Employers Need to Know,* Ariz.Bar J., April–May 1987, at 8, 10 ("Note that according to House Report 99–662 [sic], the employer is not expected to ascertain the 'legitimacy of the documents' but only to examine them and note whether they are reasonable on their face").

edge has great potential to upset that balance, and it should not be expansively applied. The statute prohibits the hiring of an alien *"knowing* the alien is an unauthorized alien ... with respect to such employment." 8 U.S.C. § 1324a(a)(1)(A) (emphasis added). Insofar as that prohibition refers to actual knowledge, as it appears to on its face, any employer can avoid the prohibited conduct with reasonable ease. When the scope of liability is expanded by the doctrine of constructive knowledge, the employer is subject to penalties for a range of undefined acts that may result in knowledge being imputed to him. To guard against unknowing violations, the employer may, again, avoid hiring anyone with an appearance of alienage. To preserve Congress' intent in passing the employer sanctions provisions of IRCA, then, the doctrine of constructive knowledge must be sparingly applied.

Indeed, the only federal cases we have found that have allowed constructive knowledge to satisfy the knowledge element of section 1324a(a)(1)(A) are two recent decisions of this court. A comparison of those cases with the one before us illustrates why constructive knowledge cannot be found here.

In *Mester Mfg. Co. v. INS,* 879 F.2d 561 (9th Cir.1989), the INS had visited the employer's plant and obtained a list of employees. It then notified the employer that certain employees were suspected unlawful aliens, and if their green cards matched the numbers listed in the INS' letter to the employer, then they were using false cards or cards belonging to someone else. The employer did not take any corrective action, and continued to employ the unlawful aliens. We found constructive knowledge.

*New El Rey Sausage Co. v. INS,* 925 F.2d 1153 (9th Cir.1991), is essentially the same case. The INS visited the employer to inspect paperwork. After running checks on the alien registration numbers of the workers, the INS found several using improper or borrowed numbers. The INS then hand-delivered a letter to the employer reciting the results of its investigation and saying: "Unless these individuals can provide valid employment authorization from the United States Immigration and Naturalization Service, they are to be considered unauthorized aliens, and are therefore not authorized to be employed in the United States. Their continued employment could result in fine proceedings...." *Id.* at 1155. The employer simply accepted the word of the aliens as to their legal status, and continued to employ them. We found constructive knowledge.

These cases lead us to conclude that a finding of constructive knowledge under the hiring violation statute requires more than the ALJ found to exist here. Failure to compare the back of a Social Security card with the example in the INS handbook, when neither statute nor regulation requires the employer to do so, falls far short of the "willful blindness" found in *Mester* and *New El Rey Sausage.*[17] To 'expand the concept of constructive knowledge to encompass this case would not serve the intent of Congress, and is certainly not required by the terms of ICRA.

## CONCLUSION

Collins Foods did not have the kind of positive information that the INS had provided in *Mester* and *New El Rey Sausage* to support a finding of constructive knowledge. Neither the failure to verify documentation before offering employment, nor the failure to compare the back of the applicant's Social Security card with the example in the INS manual, justifies such a finding. There is no support in the employer sanctions provisions of IRCA or in their legislative history to charge Collins Foods, on the basis of the facts relied on by the ALJ here, with constructive knowledge of

**17.** Both *Mester* and *New El Rey Sausage* relied on *United States v. Jewell,* 532 F.2d 697, 698 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), for its application of the constructive knowledge standard. In *Jewell,* the constructive knowledge finding was based upon "a mental state in which the defendant is aware that the fact in question is highly probable but consciously avoids enlightenment," *id.* at 704, or the defendant evidenced willful blindness.

Rodriguez' unauthorized status. Accordingly, we reverse.

REVERSED.