**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 17, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

SPLIT RAIL FENCE COMPANY, INC., a
Colorado corporation,

     Petitioner,

v.

UNITED STATES OF AMERICA, United
States Department of Justice Executive
Office for Immigration Review Office of
the Chief Administrative Hearing Officer,

     Respondent.

No. 15-9561
(DOJ No. 12A00059)
(Department of Justice)

———————————————————

**ORDER**
———————————————————

Before **HARTZ**, **HOLMES**, and **MATHESON**, Circuit Judges.
———————————————————

     This matter is before the court on the petitioner's *Petition for Rehearing En Banc*.

Any implicit request for panel rehearing contained in the *Petition* is denied. We have

however, *sua sponte*, decided to revise the original opinion on pages 36 and 41 for

clarification.  A copy of the amended opinion and its appendix are attached hereto.

     The *Petition for Rehearing En Banc* was transmitted to all of the judges of the

court who are in regular active service and who are not disqualified.* As no member of

---

    * The Honorable Neil M. Gorsuch is recused in this matter. He did not participate
in consideration of the petition.

the panel and no judge in regular active service on the court requested that the court be polled, the request for en banc review is denied.

The Clerk is directed to file the amended opinion and its appendix effective the date of this order.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

March 17, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SPLIT RAIL FENCE COMPANY, INC., a
Colorado corporation,

     Petitioner,

v.

UNITED STATES OF AMERICA, United
States Department of Justice Executive
Office for Immigration Review Office of the
Chief Administrative Hearing Officer,

     Respondent.

No. 15-9561

_____

**APPEAL FROM THE DEPARTMENT OF JUSTICE**
**(DOJ No. 12A00059)**
_____

Christopher J. Forrest, Miller & Steiert, P.C., Littleton, Colorado (Michael P. Miller and
Benjamin L. Broder, Miller & Steiert, P.C., Littleton, Colorado; and Ann Allott, Allott
Immigration Law Firm, Centennial, Colorado, with him on the briefs), appearing for
Petitioner.

Dana M. Camilleri, Trial Attorney (Benjamin C. Mizer, Principal Deputy Assistant
Attorney General, Civil Division, and Anthony P. Nicastro, Acting Assistant Director,
with her on the brief), Office of Immigration Litigation, Civil Division, United States
Department of Justice, Washington, DC, appearing for Respondent.
_____

Before **HARTZ**, **HOLMES**, and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Split Rail Fence Company, Inc., a Colorado business that sells and installs fencing materials, petitions for review of an administrative law judge's ("ALJ") summary decision. The decision imposed civil penalties on Split Rail for violating the Immigration Reform and Control Act ("IRCA") by (1) "hir[ing] for employment in the United States an individual without complying with the requirements of subsection (b)" of 8 U.S.C. § 1324a in violation of § 1324a(a)(1)(B) (Count One); and (2) "continu[ing] to employ [an] alien in the United States knowing the alien is (or has become) an unauthorized alien" in violation of § 1324a(a)(2) (Count Two). Exercising jurisdiction under § 1324a(e)(8), we deny Split Rail's petition.

## I. **BACKGROUND**

We begin by explaining the relevant legal background, the administrative enforcement and adjudication process, and the factual and procedural history of this case.

### A. *Legal Background*

Congress amended the Immigration and Nationality Act ("INA") in 1986 by enacting the IRCA. IRCA Section 274A establishes "an extensive 'employment verification system,' § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3)." *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002).

Known as the I-9 system, the IRCA requires employers (1) "to verify the identity of their employees and ensure they are eligible to work in the United States by examining certain . . . documents" specified in § 1324a(b), and (2) to complete and retain an

Employment Eligibility Verification Form (I-9 form) for each employee. *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 751 (10th Cir. 2010) (citing 8 C.F.R. § 274a.2(b)). A copy of the I-9 form and instructions relevant to this appeal is attached as an appendix to aid in understanding this opinion.

Section 1324a(b) specifies that an employer must "attest . . . that it has verified that the individual is not an unauthorized alien by examining . . . (i) a document described in subparagraph (B), or (ii) a document described in subparagraph (C) and a document described in subparagraph (D)." 8 U.S.C. § 1324a(b)(1)(A). The acceptable verification documents for each category are listed in § 1324a(b)(1)(B)-(D), 8 C.F.R. § 274a.2(b)(1)(v), and in the "Lists of Acceptable Documents" instructions page accompanying the I-9 form ("List A, B, or C documents"). Once the employer has examined the appropriate documents, it must record the title, number, and expiration date (if any) of those documents in Section 2 of the I-9 form.

IRCA Section 274A makes it unlawful for an employer (1) "to hire . . . an alien knowing the alien is an unauthorized alien," 8 U.S.C. § 1324a(a)(1); (2) "to hire . . . an individual without complying with" the I-9 system, *id.* § 1324a(a)(1)(B); or (3) "to continue to employ [an] alien . . . knowing the alien is (or has become) an unauthorized alien," *id.* § 1324a(a)(2). An "unauthorized alien" is an alien who is neither "(A) an alien lawfully admitted for permanent residence, [nor] (B) authorized to be so employed by [the IRCA] or by the Attorney General." *Id.* § 1324a(h)(3). Within the agency, the first type of violation is called a "knowing hire" violation. *See, e.g.*, *United States v. Jalisco's Bar and Grill, Inc.*, 11 OCAHO 1224, 2014 WL 4056921, *3 (June 27, 2014). Of

- 3 -

relevance to this case, the second is called a "paperwork violation," *id.*, and the third is a "knowing continue to employ violation," *United States v. Muniz Concrete & Contracting, Inc.*, 12 OCAHO 1278, 2016 WL 2851340, at *8 (Apr. 29, 2016).

The IRCA also includes an anti-discrimination provision under which an employer's "request, for purposes of satisfying the requirements of section 1324a(b) of this title, for more or different documents than are required under such section or refusing to honor documents tendered that on their face reasonably appear to be genuine shall be treated as an unfair immigration-related employment practice if made for the purpose or with the intent of discriminating against an individual." 8 U.S.C. § 1324b(a)(6); *see also Edmondson*, 594 F.3d at 767.

### B. *Administrative Enforcement and Adjudication*

The regulations implementing the IRCA authorize Immigration and Customs Enforcement ("ICE"), an agency within the Department of Homeland Security ("DHS"), to "conduct investigations for violations on its own initiative."[1] 8 C.F.R. § 274a.9(b).

ICE's investigation process typically begins by serving a Notice of Inspection ("NOI") to the employer. U.S. Immigration and Customs Enforcement, *Form I-9 Inspection Overview* (June 26, 2013), https://www.ice.gov/factsheets/i9-inspection. The NOI compels production of the employer's I-9 forms and may request other supporting

---

[1] The regulations originally granted Immigration and Naturalization Service ("INS") with enforcement power. The Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, which went into effect in 2003, abolished the INS, 6 U.S.C. § 291, and created ICE, *id.* § 271, which now enforces violations of Section 274 of the IRCA, *see id.* § 271(b).

documentation. *Id.* Once the forms are produced, ICE agents inspect them for compliance. *Id.*

When the inspection is complete, ICE notifies the employer of the results in writing. *Id.* If ICE determines that the employer has violated IRCA Section 274A, it may issue a "Warning Notice," such as a "Notice of Suspect Documents" ("NSD"), containing "a statement of the basis for the violations and the statutory provisions alleged to have been violated." 8 C.F.R. § 274a.9(c). In addition to or in place of a Warning Notice, ICE may serve a Notice of Intent to Fine ("NIF"), which commences proceedings to assess administrative penalties. *Id.* § 274a.9(d); *see also* 8 U.S.C. § 1324a(e)(4), (5) (allowing the assessment of civil penalties). An employer served with an NIF may negotiate a settlement with ICE or request a hearing before an ALJ. 8 C.F.R. § 274a.9(e).

The United States Department of Justice's Office of the Chief Administrative Hearing Officer ("OCAHO") has jurisdiction to hear alleged violations under the INA. Hearings are conducted before ALJs who issue orders stating their findings of law and fact. 8 U.S.C. § 1324a(e)(3)(B)-(C). An ALJ's order becomes the final agency decision unless appealed to the Chief Administrative Hearing Officer ("CAHO"). 28 C.F.R. § 68.52(g). A party adversely affected by a final order may then petition a circuit court for review. 28 C.F.R. § 68.56.

C. *Factual and Procedural History*

1. **ICE's 2009 Investigation, Notice of Suspect Documents, and Settlement**

On June 20, 2009, ICE special agents conducted an inspection at Split Rail to

determine its compliance with the IRCA. During the inspection, it examined Split Rail's

I-9 forms. On September 11, 2009, ICE sent Split Rail an NSD stating:

> This letter is to inform you that, according to the records checked by ICE, the following individuals appear, at the present time, not to be authorized to work in the United States. The documents submitted to you were found to pertain to other individuals, or there was no record of the alien registration numbers being issued, or the documents pertain to the individuals but the individuals are not employment authorized or their employment authorization has expired. Accordingly, the documentation previously provided to you for these employees does not satisfy the Form I-9 employment eligibility verification requirements of the Immigration and Nationality Act.

App. at 145. The NSD listed 32 current employees and 51 terminated employees. It

further stated, "Unless the above employee(s) present valid identification and

employment eligibility documentation acceptable for completing the Form I-9, other than

the documentation previously submitted to you, they are considered by ICE to be

unauthorized to work in the United States." App. at 147. It noted that continued

employment of these employees without valid documentation could subject Split Rail to

civil monetary penalties.

Split Rail's president and owner, Tom Barenberg, stated in his affidavit that

"shortly after" Split Rail received the NSD, it served the NSD on the 32 current

employees named in it, videotaping the service.[2] *Id.* at 723. He further stated, "Twenty-three (23) of the employees would not affirm that they were authorized to work in the United States and their employment was immediately terminated." *Id.* The nine remaining employees continued to work at Split Rail.

On October 14, 2009, Split Rail emailed the Office of Special Counsel ("OSC") for Immigration Related Unfair Employment Practices, seeking guidance on how it should respond to the NSD consistent with the IRCA's anti-discrimination provision. OSC replied:

> [OSC] cannot provide an advisory opinion on any particular instance of alleged discrimination or on any set of facts involving a particular individual or entity. However, we can provide some general guidelines regarding employer compliance with the INA's anti-discrimination provision.
>
> . . . .
>
> The anti-discrimination provision of the INA prohibits the request for specific documents or the rejection of documents during the employment eligibility verification process with the intent to discriminate on the basis of national origin or citizenship status. However, it has been long recognized that action by an employer taken for reasons other than an intent to discriminate does not constitute an unfair employment practice within the meaning of the antidiscrimination provision of the INA. While an ICE Notice of Suspect Documents may provide a non-discriminatory reason behind the decision to re-verify an employee's employment eligibility, the standard for accepting documents presented by the employee to re-establish his or her employment eligibility remains the same—whether the document(s) presented reasonably appear on their face to be genuine and to relate to the person who presents the document(s).

App. at 696-97 (citations omitted).

---

[2] Split Rail has not offered the recording as evidence.

On February 1, 2010, ICE served Split Rail with an NIF, and in June 2010, ICE and Split Rail entered a settlement agreement.

2. **Jaime Lopez Ramirez's I-9 Form**

On October 5, 2009—after the issuance of the 2009 NSD and before the settlement—Split Rail hired Jaime Lopez Ramirez. It verified his employment eligibility using his Mexican passport, which included a temporary I-551 stamp. The I-551 stamp authorized employment in the United States until September 13, 2010. Mr. Lopez Ramirez continued working at Split Rail after his I-551 authorization expired. Split Rail did not update or re-verify his employment authorization on or after that date.

3. **ICE's 2011 Investigation and NSD**

On June 15, 2011, ICE mailed Split Rail a Notice of Inspection and five days later began a review of Split Rail's I-9 forms "for possible violations of Section 274A" of the IRCA. App. at 161. ICE completed its investigation on August 29, 2011, and mailed Split Rail an NSD the next day, which read:

> This letter is to inform you that, according to the records checked by ICE, the following individuals appear, at the present time not to be authorized to work in the United States. The documents submitted to you were found to pertain to other individuals, or there was no record of the alien registration numbers being issued, or the documents pertain to the individuals but the individuals are not employment authorized or their employment authorization has expired. Accordingly, the documentation previously provided to you for these employees does not satisfy the Form l-9 employment eligibility verification requirements of the Immigration and Nationality Act.

The NSD listed nine current employees and one terminated employee, stating,

> Unless the [named] employee(s) present valid identification and employment eligibility documentation acceptable for completing the Form

I-9 other than the documentation previously submitted to you, they are considered by ICE to be unauthorized to work in the United Sates. If you continue to employ these individuals without valid documentation, you may be subject to a civil money penalty. . . .

If you or the employees feel that this determination is in error and the employees are authorized to work, immediately call [the] Forensic Auditor . . . . ICE will re-verify the information provided about the employees, including any new information provided by you or the employees.

*Id.* at 152-53.

All but one of the individuals named in the 2011 NSD had also been named in the 2009 NSD. Split Rail had not updated or changed the I-9 forms of the nine employees named in both NSDs since the 2009 inspection. According to Mr. Barenberg's affidavit, these nine employees were among the 32 employees Split Rail had videotaped after receiving the 2009 NSD. He stated that, during the videotaping, the nine employees had all orally "verified that they were authorized to work in the U.S." App. at 723.

On September 26, 2011, ICE served Split Rail with an NIF, commencing this administrative proceeding against Split Rail. Split Rail requested a hearing before an ALJ three days later.

On February 17, 2012, Mr. Barenberg mailed ICE a letter, stating he "had absolutely no reason to believe either now or at any time in the past that any of [the nine individuals identified as 'current employees' in the 2011 NSD] are anything but law abiding residents of the United States of America." *Id.* at 586. He noted many of them were long-term employees who, along with their families, had been involved in company activities, parties, and picnics. He further stated they each appeared authorized to work in the United States because they had bank accounts, cars, homes, and mortgages. He

also noted many had valid driver's licenses and some had filed successful workers' compensation claims. He did not, however, state that Split Rail had taken any action regarding the employees' I-9 forms.

4. **ICE's Complaint and Summary Decision**

On April 6, 2012, ICE filed a complaint against Split Rail. On July 20, 2012, it filed an amended complaint—the complaint relevant to this appeal.

Count One of the amended complaint alleged a paperwork violation under § 1324a(b) as to Mr. Lopez Ramirez. It alleged that (1) when Split Rail hired Mr. Lopez Ramirez, it verified his employment eligibility using his Mexican passport, which included a temporary I-551 stamp authorizing employment in the United States until September 13, 2010; (2) § 1324a(b) required Split Rail to re-verify his work authorization and update his I-9 form with the new basis for employment eligibility when his authorization expired; and (3) Split Rail failed to do so and therefore committed a paperwork violation under § 1324a(a)(1)(B).

Count Two alleged Split Rail continued to employ nine of the employees listed on the 2011 NSD knowing they were or had become unauthorized in violation of § 1324a(a)(2).

ICE moved for summary decision under 28 C.F.R. § 68.38, the administrative analog to summary judgment under Federal Rule of Civil Procedure 56. The ALJ granted ICE summary decision on both counts. Split Rail timely filed its petition for review with this court.

## II. **DISCUSSION**

### A. *Standard of Review*

We have yet to determine the standard of review that applies to a summary

decision under 28 C.F.R. § 68.38(c). Split Rail argues de novo review applies. ICE

asserts we may only reverse if the ALJ's decision was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law," arguing that we should review

questions of law de novo and factual determinations for a basis in "substantial evidence."

*See* 5 U.S.C. § 706(2)(A), (E). Other circuits reviewing ALJ decisions in this context

have used varying standards.[3] Because we conclude under de novo review—the standard

most favorable to Split Rail—there is no genuine issue of material fact and ICE is entitled

to summary decision, we need not decide which standard applies.

### B. *Summary Decision Standard*

The requirements for a summary decision under 28 C.F.R. § 68.38(c) are the same

as under Federal Rule of Civil Procedure 56. *See Getahun v. OCAHO*, 124 F.3d 591, 594

(3d Cir. 1997) ("The standards governing the entry of summary judgment under Fed. R.

Civ. P. 56(c) in federal court cases are applied in determining whether summary decision

under 28 C.F.R. § 68.38(c) is appropriate in OCAHO cases."); *United States v. Foothill*

---

[3] *See, e.g.*, *Getahun v. OCAHO*, 124 F.3d 591, 594 (3d Cir. 1997) (exercising "plenary review" while giving "some deference . . . to an agency's reasonable construction of a statute it is charged with administering"); *Villegas-Valenzuela v. INS*, 103 F.3d 805, 809, 812 (9th Cir. 1996) (same); *Odongo v. OCAHO*, 610 F. App'x 440, 441 (5th Cir. 2015) (unpublished) (reviewing fact findings for substantial evidence and conclusions of law de novo); *Martinez v. Linen*, 579 F. App'x 573, 573 (9th Cir. 2014) (unpublished) (same); *Rompalli v. Tykhe Capital, LLC*, 452 F. App'x 69, 69-70 (2d Cir. 2012) (unpublished) (applying the arbitrary or capricious standard).

*Packing, Inc.*, 11 OCAHO 1240, 2015 WL 329579, *5-6 (2015) (citing the Rule 56 standard in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), to explain the summary decision standard under 28 C.F.R. § 68.38(c)).

Under 28 C.F.R. § 68.38(c), an ALJ "shall enter a summary decision for either party if the pleadings, affidavits, material obtained by discovery or otherwise, or matters officially noticed show that there is no genuine issue as to any material fact and that a party is entitled to summary decision." An issue is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quotations omitted); *see also Anderson*, 477 U.S. at 248. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Anderson*, 477 U.S. at 248; *Foothill Packing, Inc.*, 11 OCAHO 1240, 2015 WL 329579, at *5.

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Celotex*, 477 U.S. at 323; *Foothill Packing, Inc.*, 11 OCAHO 1240, 2015 WL 329579, at *6. If the movant satisfies this initial burden, the burden shifts to the non-movant to show specific facts from which a rational trier of fact could find for the non-movant. *See Celotex*, 477 U.S. at 324; *Foothill Packing, Inc.*, 11 OCAHO 1240, 2015 WL 329579, at *6.

## C.  *Count One*

We deny Split Rail's petition for review of Count One because Split Rail failed to update Section 3 of Mr. Lopez-Ramirez's I-9 form when his work authorization expired,

leaving no issue of material fact to be resolved and entitling ICE to judgment as a matter of law.

1. **Further Legal Background**

As explained above, the regulations promulgated under § 1324a require an employer to complete an I-9 form. 8 C.F.R. § 274a.2(a)(2),(b)(1). Relevant here is the August 2009 version of the I-9 form, excerpted below and attached at the end of this opinion, which Mr. Lopez Ramirez and Split Rail filled out when Mr. Lopez Ramirez was hired. That version consisted of three sections.

a. *Section 1*

The employee must complete Section 1, titled "Employee Information and Verification," and attest under penalty of perjury his or her legal status in the United States. *See id.* § 274a.2(b)(1)(i) (stating that when an employer hires an individual, the

| Section 1. Employee Information and Verification *(To be completed and signed by employee at the time employment begins.)* | | | |
|---|---|---|---|
| Print Name: Last | First | Middle Initial | Maiden Name |
| Address *(Street Name and Number)* | | Apt. # | Date of Birth *(month/day/year)* |
| City | State | Zip Code | Social Security # |

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following):
☐ A citizen of the United States
☐ A noncitizen national of the United States (see instructions)
☐ A lawful permanent resident (Alien #) _____
☐ An alien authorized to work (Alien # or Admission #) _____
until (expiration date, if applicable - *month/day/year*)

Employee's Signature | Date *(month/day/year)*

employer "must ensure that the individual properly . . . [c]ompletes [S]ection 1").

b. *Section 2*

- 13 -

The employer must complete Section 2, titled "Employer Review and Verification," to confirm the identity and employment authorization of the employee by listing the document numbers and expiration dates of examined documents. *See id.* § 274a.2(b)(1)(ii) (explaining an employer "must within three business days of hire . . . [c]omplete [S]ection 2").

---

**Section 2. Employer Review and Verification** *(To be completed and signed by employer. Examine one document from List A OR examine one document from List B and one from List C, as listed on the reverse of this form, and record the title, number, and expiration date, if any, of the document(s).)*

| List A | OR | List B | AND | List C |
|--------|----|--------|-----|--------|
| Document title: | | | | |
| Issuing authority: | | | | |
| Document #: | | | | |
| Expiration Date *(if any):* | | | | |
| Document #: | | | | |
| Expiration Date *(if any):* | | | | |

**CERTIFICATION: I attest, under penalty of perjury, that I have examined the document(s) presented by the above-named employee, that the above-listed document(s) appear to be genuine and to relate to the employee named, that the employee began employment on** *(month/day/year)* _____ **and that to the best of my knowledge the employee is authorized to work in the United States.** **(State employment agencies may omit the date the employee began employment.)**

| Signature of Employer or Authorized Representative | Print Name | Title |
|---|---|---|
| Business or Organization Name and Address *(Street Name and Number, City, State, Zip Code)* | | Date *(month/day/year)* |

---

Documents satisfying the "List A" category are listed on the "Lists of Acceptable Documents" instructions page accompanying the I-9 form , and in subparagraph B of § 1324a(b)(1). Satisfactory documents include a "[f]oreign passport that contains a temporary I-551 stamp." App. at 749. Finally, the instructions to the I-9 form state, "Employers may, but are not required to, photocopy the document(s) presented." *Id.* If an employer chooses to make photocopies, they "must be retained with Form I-9." *Id.*

   c. *Section 3*

The employer also must complete Section 3, titled "Updating and Reverification." The employer must note the employee's current employment authorization document title, number, and expiration date if his previous grant of work authorization has expired.

| Section 3. Updating and Reverification *(To be completed and signed by employer.)* | |
| --- | --- |
| A. New Name *(if applicable)* | B. Date of Rehire *(month/day/year) (if applicable)* |
| C. If employee's previous grant of work authorization has expired, provide the information below for the document that establishes current employment authorization. | |
| Document Title: _____ Document #: _____ Expiration Date *(if any)*: _____ | |

The instructions to the I-9 form state, "Employers must reverify employment authorization of their employees on or before the work authorization expiration date recorded in Section 1 (if any)." *Id.* at 746.; *see also* 8 C.F.R. § 274a.2(b)(1)(vii) ("If an individual's employment authorization expires, the employer . . . must reverify on the Form I-9 to reflect that the individual is still authorized to work in the United States; otherwise the individual may no longer be employed, recruited, or referred."). The regulations explain in further detail,

> In order to reverify on the Form I-9, the employee . . . must present a document that either shows continuing employment eligibility or is a new grant of work authorization. The employer or the recruiter or referrer for a fee must review this document, and if it appears to be genuine and relate to the individual, re-verify by noting the document's identification number and expiration date, if any, on the Form I-9 and signing the attestation by a handwritten signature or electronic signature in accordance with paragraph (i) of this section.

8 C.F.R. § 274a.2(b)(1)(vii).

2. **Additional Factual Background**

When Split Rail hired Mr. Lopez Ramirez, he presented a Mexican passport with a temporary I-551 stamp showing an expiration date of September 13, 2010. In Section 1

of his I-9 form, Mr. Lopez Ramirez wrote his alien number and incorrectly checked off that he was a lawful permanent resident.  In Section 2, Split Rail listed that it had examined one List A document—Mr. Lopez Ramirez's Mexican passport.  Split Rail noted his passport number and that his passport would expire on September 14, 2012, but did not note the expiration date of his temporary I-551 work authorization.  Split Rail also retained a photocopy of Mr. Lopez Ramirez's Mexican passport and temporary I-551 stamp with his I-9 form.  Despite the September 13, 2010 expiration date of Mr. Lopez Ramirez's temporary I-551 stamp, Split Rail never completed Section 3.  It continued to employ him after his work authorization had expired.

3. **Analysis**

The ALJ found no issue of material fact that Split Rail did not properly complete Sections 2 and 3.  We agree as to Section 3 and conclude that ICE is entitled to summary decision.  Because the failure to complete Section 3 is sufficient to deny Split Rail's petition for review, we decline to address the ALJ's Section 2 analysis.

Split Rail left Section 3 blank after Mr. Lopez Ramirez's work authorization expired on September 13, 2010.  As explained above, Section 3 itself, the Form I-9 instructions, and 8 C.F.R. § 274a.2(b)(i)(vii) required Split Rail to re-verify Mr. Lopez Ramirez's authorization on or before its expiration date and provide information regarding his new document establishing current employment authorization in Section 3.  Split Rail failed to do so.

Split Rail argues it was not required to update and re-verify Section 3 because Mr. Lopez Ramirez did not check off "alien authorized to work" in Section 1.  He instead

- 16 -

checked off "lawful permanent resident" and provided an alien number.  We agree that, although Mr. Lopez Ramirez provided Split Rail with a Mexican passport and a temporary I-551 stamp, he incorrectly stated in Section 1 he was a lawful permanent resident.

But Split Rail should have caught this mistake.  *See* Form I-9 Instructions (stating in bold, "The employer is responsible for ensuring that Section 1 is timely *and properly* completed." (emphasis added)).  Mr. Lopez Ramirez's mistake did not relieve Split Rail of its duty to complete Section 3.  In Section 2, Split Rail had itself identified his Mexican passport, not permanent residence, as the basis for Mr. Lopez Ramirez's eligibility to work in the United States.  It used information on the passport to complete Section 2 ("Employer Review and Verification") of the I-9 form.  Split Rail also retained a copy of the passport and temporary I-551 stamp with Mr. Lopez Ramirez's I-9 form.  When his temporary I-551 expired, Split Rail was required to complete Section 3 with the information about his current employment authorization.

We therefore deny Split Rail's petition for review as to Count One.

### D.  *Count Two*

The ALJ found Split Rail liable under Count Two for knowingly continuing to employ nine unauthorized aliens.  As explained further below, this violation requires proof that (1) the employees were unauthorized and that (2) the employer knew they were unauthorized.

Split Rail's brief on Count Two is confusing.  On the one hand, its "Issues Presented" section lists—in relevant part—only a challenge to the ALJ's finding that

Split Rail had constructive knowledge of its employees' unauthorized status, Pet. Br. at 3, and Split Rail's brief concludes by seeking only a determination "that ICE has failed to establish its burden of proof regarding Split Rail's constructive knowledge," *id*. at 58. On the other hand, in discussing constructive knowledge, Split Rail appears to contest the ALJ's finding that the employees were unauthorized. For example, it repeatedly argues an NSD is insufficient to establish unauthorized status, and challenges the reliability of ICE's database searches to establish unauthorized status. *Id*. at 36, 42.

Although Split Rail's brief could be read to challenge only the ALJ's constructive knowledge finding on Count Two, it is sufficiently ambiguous that we address both elements below. Our analysis leads us to deny the petition for review because Split Rail has failed to raise a genuine issue of material fact as to either element and ICE is entitled to summary decision.

1. **Further Legal and Administrative Background**

The IRCA makes it "unlawful for a person or other entity" that has lawfully hired an alien under the statute "to continue to employ the alien in the United States knowing the alien is (or has become) an unauthorized alien with respect to such employment." 8 U.S.C. § 1324a(a)(2). Thus, as relevant to this petition, a knowing-continue-to-employ violation encompasses two essential elements: the employee's unauthorized status and the employer's knowledge of the employee's unauthorized status.[4]

---

[4] Because Split Rail's petition for review mentions only unauthorized status and constructive knowledge, our review of the knowing-continue-to-employ violation is

Continued . . .

The sparse federal case law on § 1324a(a)(2) violations comes from the Ninth Circuit. We find those cases and the application of their reasoning by the OCAHO decisions cited herein to be persuasive in interpreting both essential elements.[5] Based on the case law and the IRCA statute, this background section addresses three points pertaining to our review of Count Two.

First, ICE can establish a prima facie showing of an employee's unauthorized status with evidence that a computer search of its records had indicated the employee was suspected to be unauthorized due to false I-9 documentation. *See Mester Mfg. Co. v. INS*, 879 F.2d 561, 566 (9th Cir. 1989).

Second, evidence of notice to an employer that ICE's investigation had revealed an employee was suspected to be unauthorized, coupled with the employer's failure to take adequate steps to re-verify the individual's employment eligibility, can establish a prima facie showing of the employer's constructive knowledge that the employee is unauthorized. *See New El Rey Sausage Co., Inc. v. INS*, 925 F.2d 1153, 1158 (9th Cir. 1991).

Third, the IRCA contemplates that an employer's examining and proffering the documents outlined in § 1324a(b)(1)(B)-(D), other than those originally presented when the employee was hired, to prove the employee is authorized for employment can rebut a

---

limited to these two elements. We decline to address elements of a § 1324a(a)(2) violation not briefed by the parties.

[5] We may consider non-binding cases for their persuasive value. *See, e.g.*, *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1240 n.7 (10th Cir. 2016).

prima facie showing of both unauthorized status and constructive knowledge. Without these documents, or specific challenges to the sufficiency of the government's search results or the notice to the employer, ICE's prima facie showings of unauthorized status and constructive knowledge can establish a knowing-continue-to-employ violation under § 1324a(a)(2) in this case, warranting a summary decision. *See, e.g.*, *Mester*, 879 F.2d at 566; *New El Rey*, 925 F.2d at 1158 (describing *Mester*); *United States v. Occupational Res. Mgmt., Inc.*, 10 OCAHO 1166, 2013 WL 1918850, at *8 (2013) (citing *Mester*).

a. *Prima facie showing of unauthorized status*

The government may make a prima facie showing of an employee's unauthorized status in an administrative proceeding under § 1324a(a)(2) by producing proof from its computer records that the employee's documentation is false, thereby demonstrating the employee is suspected to be unauthorized.

Section 1360 mandates the creation of a "central index, which shall contain the names of all aliens heretofore admitted or denied admission to the United States . . . and the names of all aliens hereafter admitted or denied admission to the United States." 8 U.S.C. § 1360(a). The Department of Homeland Security ("DHS") maintains the Central Index System ("CIS") database, which contains a record of immigrant and non-immigrant status information.[6] DHS also maintains other relevant databases, including:

---

[6] *See* U.S. Department of Homeland Security, *Privacy Impact Assessment for the Central Index System*, at 2 (June 22, 2007), *available at* https://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_uscis_cis.pdf; *see also United States v. Mendez*, 514 F.3d 1035, 1040 (10th Cir. 2008) (describing the CIS database as
Continued . . .

(1) the Computer Linked Application Information Management System ("CLAIMS"),

which tracks and processes naturalization and benefits applications;[7] and (2) the

Enforcement Integrated Database—accessed, in part, through the ENFORCE Alien

Removal Module ("EARM")—which maintains information related to investigations,

arrests, bookings, detentions, and removals of persons encountered during investigations

by law enforcement and DHS agencies.[8]

Once the employer produces its I-9 forms and any other requested documentation

in response to the NOI, ICE agents "conduct an inspection of the Forms I-9 for

compliance," which may include comparison with ICE's electronic databases. U.S.

Immigration and Customs Enforcement, *Form I-9 Inspection Overview* (June 26, 2013),

https://www.ice.gov/factsheets/i9-inspection.

---

including records "such as permanent residence cards, border crossing cards, and certificates of naturalization").

[7] *See* U.S. Department of Homeland Security, *Privacy Impact Assessment Update for the Computer Linked Application Information Management System 4 (CLAIMS 4)*, at 2 (Nov. 5, 2013), *available at* https://www.dhs.gov/sites/default/files/publications/privacy-pia-update-uscis-claims4-november2013.pdf; *see also Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) (stating CLAIMS "is used to track applications or petitions for benefits filed under the Immigration and Nationality Act" (quotations omitted)).

[8] U.S. Department of Homeland Security, *Privacy Impact Assessment Update for the Enforcement Integrated Database (EID)*, at 2 (May 20, 2011), *available at* https://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_ice_eidupdate(15b).pdf; *see also Long v. Dep't of Homeland Sec.*, 113 F. Supp. 3d 100, 101 (D.D.C. June 29, 2015) (describing EID as "a shared, operational database within ICE containing information on the detention and removal of undocumented immigrants, including their biographical data, criminal history, and encounters with law enforcement agents").

If ICE issues an NSD and the employer requests an administrative hearing, the results of ICE's database searches are admissible evidence. Specifically, a written certification from an ICE officer that a diligent search of CIS was made and no record or entry can be found is "admissible as evidence . . . that the records of [ICE] contain no such record or entry, and shall have the same effect as the testimony of a witness given in open court." 8. U.S.C. § 1360(d).

Ninth Circuit and OCAHO case law agree that when a computer search of DHS's records system demonstrates an employee's documentation is false—making the employee's authorization suspect—the government establishes a prima facie showing of unauthorized status. *See Mester*, 879 F.2d at 566; *Occupational Res. Mgmt., Inc.*, 10 OCAHO 1166, 2013 WL 1918850, at *8; *cf. United States v. New El Rey Sausage Co., Inc.*, 1 OCAHO 66, 1989 WL 433853, at *19 n. 16 (1989), *aff'd*, 925 F.2d 1153, 1154 (9th Cir. 1991); *United States v. Horno MSJ, Ltd.*, 11 OCAHO 1247, 2015 WL 1746681, at *9-11 (2015).

For example, in *Mester*, the Ninth Circuit found that the INS's reliance on a computer search of its records system revealing that an employee's documentation was false was sufficient to establish a prima facie showing before the ALJ. *Mester*, 879 F.2d at 566.

Similarly, in *Occupational Resource Management*, the ALJ explained that although "ICE is not required to present conclusive evidence of the employee's unauthorized status," "[w]hen the government makes a prima facie showing that a document is false based on a computer search of its records system, and the employer

- 22 -

fails to provide any evidence to the contrary, substantial evidence supports a finding of lack of [employee work] authorization" to support a summary decision. 10 OCAHO 1166, 2013 WL 1918850, at *8 (quotations omitted) (citing *Mester*, 879 F.2d at 566).[9]

The government's search of its records must establish that the employee's status is reasonably suspect, and the results cannot contain fatal "discrepancies and ambiguities," which would make the results "inconclusive." *See Horno MSJ*, 11 OCAHO 1247, 2015 WL 1746681, at *9-11; *New El Rey*, 1 OCAHO 66, 1989 WL 433853, at *25.

b. *Prima facie showing of constructive knowledge*

For a § 1324a(a)(2) knowing-continue-to-employ violation, "[t]he term knowing includes not only actual knowledge but also knowledge which may fairly be inferred through notice of certain facts and circumstances which would lead a person, through the exercise of reasonable care, to know about a certain condition," including when an employer "[h]as information available to it that would indicate that the alien is not authorized to work." 8 C.F.R. § 274a.1(l)(1); *see also Mester*, 879 F.2d at 567 ("The knowledge element was satisfied; [the employer] had constructive knowledge, even if no . . . employee had actual specific knowledge of the employee's unauthorized status."). Accordingly, when the government proves at an administrative hearing that an employer failed to respond to a warning notice, such as an NSD, it has established a prima facie

---

[9] Although the Ninth Circuit in *Mester* and *New El Rey* reviewed the ALJ's factual findings on appeal for "substantial evidence" under 5 U.S.C. § 706(2), as stated above, we apply de novo review here.

showing of constructive knowledge to satisfy the knowledge requirement of § 1324a(a)(2).

In *Mester*, the Ninth Circuit interpreted the knowledge element of § 1324a(a)(2) to include constructive knowledge, analogizing to the treatment of knowledge in criminal law, where a "deliberate failure to investigate suspicious circumstances imputes knowledge." 879 F.2d at 567 (citing *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976) (en banc)); *see also New El Rey*, 925 F.2d at 1157-58. Soon thereafter, the definition of "knowing" that includes constructive knowledge was codified in the employment verification regulations. 8 C.F.R. § 274a.1(l)(1); Safe-Harbor Procedures for Employers Who Receive a No-Match Letter, 72 Fed. Reg. 45611-01, 45612 (Aug. 15, 2007) (stating that the definition of constructive knowledge is "consistent with the Ninth Circuit's holding[s]" in *Mester* and *New El Rey*). The "basic principle underlying the doctrine of constructive knowledge . . . is that the employer is not entitled to cultivate deliberate ignorance or avoid acquiring knowledge." *Foothill Packing, Inc.*, 11 OCAHO 1240, 2015 WL 329579 at *7.

Thus, "when an employer receives specific information that casts doubt on the employment authorization of an employee, and the employer continues to employ the individual without taking adequate steps to re-verify the individual's employment eligibility, a finding of constructive knowledge may result." *Id.* at *8 (citing *New El Rey*, 1 OCAHO 66, 1989 WL 433853, at *17, *aff'd* 925 F.2d 1153 (9th Cir. 1991) and *Noel Plastering, Stucco, Inc. v. OCAHO*, 3 OCAHO 427, 1992 WL 533132, at *2 (1992), *aff'd* 15 F.3d 1088 (9th Cir. 1993) (unpublished)); *United States v. Associated Painters, Inc.*,

- 24 -

10 OCAHO 1151, 2012 WL 8018166, at \*3 (2012) (citing same and *United States v. Mester Mfg.*, 1 OCAHO 18, 1988 WL 507634, at \*18 (1988), *aff'd* 879 F.2d 561 (9th Cir. 1989)).

The statute "does not require that the knowledge come to the employer in any specific way." *Mester*, 879 F.2d at 566. Ninth Circuit and OCAHO case law, however, have consistently held that receipt of a Warning Notice, such as an NSD, can be sufficient to impart notice. *See, e.g.*, *New El Rey*, 925 F.2d at 1158-59; *Aramark Facility Servs. v. Serv. Emps. Int'l Union, Local 1877*, 530 F.3d 817, 828 (9th Cir. 2008) (explaining notice "that the government suspects the workers of using fraudulent documents" is "positive information . . . [that] provide[s] constructive notice" of unauthorized status (quotations omitted)); *Noel Plastering*, 15 F.3d 1088, at \*1 (holding "written notice from the [INS] that the employees were likely unlawfully employed aliens . . . [was] sufficient to give an employer constructive knowledge of a violation"); *United States v. Aid Maint. Co.*, 7 OCAHO 951, 1997 WL 1051451, at \*4 (1997) ("Constructive knowledge is most readily proven when it is shown that the employer had positive information supplied by the INS, [as shown through a Warning Notice or NSD], that some of its employees are unauthorized for employment in the United States, and subsequently fails to take reasonable steps to re-verify the employment eligibility of those employees." (collecting cases)).

\*   \*   \*   \*

- 25 -

The evidence used to establish the employee's unauthorized status is related to but distinct from the evidence used to establish the employer's constructive knowledge. That is, the computer searches and inspections ICE performs to demonstrate the employee is suspected to be unauthorized and trigger an NSD are sufficient to establish the government's prima facie showing of unauthorized status. Service of the NSD informs the employer that the employee is suspected to be unauthorized, and that notice, along with the employer's failure to re-verify the employee's lawful status, establishes the government's prima facie showing of constructive knowledge.

    c. *Challenging a prima facie showing of unauthorized status and constructive knowledge*

        i. <u>Challenging unauthorized status</u>

The government's prima facie showing of unauthorized status based on a CIS computer search must stand unless the employer (1) successfully challenges the computer records search and its results, or (2) presents sufficient evidence to show the employee was authorized.

<u>First</u>, the employer may attack ICE's search results with specific evidence that the search was flawed. However, an employer's "general allegations" that the search was unreliable or generally prone to error are insufficient to overcome the prima facie evidence of unauthorized status. *Mester*, 879 F.2d at 566 (noting the employer's general allegations of unreliability lacked any specific contention, supported by facts, to rebut the government's finding that the specific employee had false documentation); *see also New El Rey*, 1 OCAHO 66, 1989 WL 433853, at *19 n.16 (rejecting that vague allegations of

unreliability or inaccuracy of the computer-generated data could negate the unauthorized status results of a properly-conducted CIS computer search).[10]  Rather, the employer must challenge, for example, specific "discrepancies [or] ambiguities" which make the results of the search inconclusive as to particular employees.  *Horno MSJ*, 11 OCAHO 1247, 2015 WL 1746681, at *9-10.

Second, presenting the documents listed in § 1324a(b)(1)(B)-(D) can rebut the government's prima facie showing of unauthorized status.[11]  As noted above, § 1324a(b)(1)(C) lists documents evidencing employment authorization (*e.g.*, a social security card), § 1324a(b)(1)(D) lists documents establishing identity (*e.g.*, a driver's license), and § 1324a(b)(1)(B) lists documents establishing both employment authorization and identity (*e.g.*, a U.S. passport or appropriate resident alien card).  Section 1324a(h)(3) defines "unauthorized alien" as an alien who is not either (a) "lawfully admitted for permanent residence," or (b) "authorized to be so employed by this chapter or by the Attorney General."  Thus, when an employer presents valid

---

[10] The OCAHO opinion in *New El Rey* concerned not whether the employees "were actually authorized to work or not, but whether [the employer] had" constructive knowledge they were unauthorized.  1 OCAHO 66, 1989 WL 433853, at *18.  The ALJ explained that it was not addressing the unauthorized status of the employees because the employer had not claimed the employees were in fact authorized to work in the United States.  *Id.*  Nonetheless, in analyzing whether the employer committed a knowing-continue-to-employ violation, the ALJ discussed the unauthorized status element of the violation.

[11] DHS has identified documents satisfying § 1324a(b)(1)(B)-(D) in 8 C.F.R. § 274a.2(b)(1)(v) and in the "Lists of Acceptable Documents" instructions page accompanying the I-9 form.

documents to the ALJ establishing the employee's identity under § 1324a(b)(1)(D) and documents evidencing employment authorization under § 1324a(b)(1)(C), or both under § 1324a(b)(1)(B), it has—by definition—rebutted the government's evidence that the employee is unauthorized.[12]

### ii. Challenging constructive knowledge

The government's prima facie showing that an employer had constructive knowledge that its employee was unauthorized based on the employer's inadequate response to an NSD can be rebutted by the employer's (1) successfully challenging the NSD (or other notice) as providing inadequate notice, or (2) evidence that it responded to the NSD as the statute required.

First, the employer may attack the sufficiency of the NSD, or other warning, as insufficient to put the employer on notice that its employee was unauthorized. Ninth Circuit and OCAHO case law have stated that, to impart constructive knowledge, the employer must receive "specific and detailed information regarding that individual's possible unauthorized status." *United States v. Noel Plastering & Stucco, Inc.*, 2

---

[12] The Ninth Circuit made a similar observation in *New El Rey* when it explained that these documents would negate a showing that the employee was unauthorized. 925 F.2d at 1158 n.7. The court likened the situation where an employee's documentation was shown to be invalid—reflecting unauthorized status—to the expiration of an employee's documentation. *Id*. It explained that if the employee's authorization had expired, 8 C.F.R. § 274a.2(b)(vii) requires that "the employer . . . update the employee's I-9 form. To do this, the employee must present further documentation, which the employer must review. This regulation is analogous to the situation here, where rather than the verification expiring, it was found to be invalid." *Id*. The documentation the employer must review to update the *expired* I-9 form is listed in § 1324a(b)(1)(B)-(D). Thus, the same documents are also sufficient to negate the *invalidity* of documentation, and rebut the government's evidence of unauthorized status.

OCAHO 377, 1991 WL 717532, at *3 (1991); *United States v. 4431 Inc., T/A Candlelight Inn*, 4 OCAHO 611, 1994 WL 269390, at *9 (1994); *see also New El Rey*, 925 F.2d at 1159 (finding the notice to be sufficiently specific to create a "reason to believe that [the employer's] employees were unauthorized").

Second, the employer may prove it responded to the NSD (or other notice) by presenting evidence the employee was authorized in the manner required by the statute. As stated in *New El Rey*, "[n]otice that [an employee's] documents are incorrect places the employer in the position it would have been if the alien had failed to produce the documents in the first place: it has failed to adequately ensure that the alien is authorized." 925 F.2d at 1158. Thus, receipt of a sufficiently specific NSD requires the employer to re-verify the employee is legally authorized for employment by examining new documents listed in § 1324a(b)(1)(B)-(D), 8 C.F.R. § 274a.2(b)(1)(v), and the "Lists of Acceptable Documents" instructions page accompanying the I-9 form. If the employer does not show that it re-verified the employee in this manner, it cannot rebut the government's showing that the NSD (or other notice), coupled with the employer's failure to re-verify, imparted constructive knowledge on the employer of the employee's unauthorized status.

2. **ALJ Proceedings**

During the proceedings before the ALJ, the parties discussed both (1) whether the employees listed in Count Two were in fact unauthorized and (2) whether Split Rail had constructive knowledge they were unauthorized.

a. *The parties' evidence*

i. ICE's evidence

In support of Count Two, ICE argued its 2009 and 2011 NSDs provided notice to Split Rail that the nine employees were not authorized, and emphasized Split Rail's failure "to request other documents from any of them."  App. at 798; *id.* at 561.  ICE also offered nine Certificates of Nonexistence of Records ("Certificates") dated January 17, 2013, regarding each of the employees listed in Count Two, and attached investigation reports as to two of the employees.  In each Certificate, a DHS Records Manager certified she either conducted or oversaw a search for records relating to each employee, using three separate databases—EARM, CLAIMS, and CIS—but found no records indicating the employee was authorized for employment.  The investigation reports showed that both employees used U.S. citizens' social security numbers without permission and that one of them used a U.S. citizen's name without permission.

ii. Split Rail's evidence

In response, Split Rail argued it took adequate steps in response to ICE's NSDs to confirm the employees were authorized.  First, it submitted Mr. Barenberg's affidavit, which explained that Split Rail had asked its employees named in the 2009 NSD to reaffirm their work authorization on video.  Second, it offered Mr. Barenberg's February 17, 2012 letter, which stated Split Rail confirmed its employees' status by determining they had bank accounts, homes, mortgages, cars, driver's licenses, and workers' compensation claims.  Third, it argued its email request for guidance from the OSC showed a good faith effort to comply with the 2009 NSD, and characterized the OSC's

- 30 -

response letter as advising Split Rail it "was under <u>no</u> obligation to re-verify employee documents which appear to be facially genuine, even in reaction to an ICE NSD."  App. at 684 (emphasis in original).

Split Rail also challenged the ICE's Certificates with an affidavit from Todd L. Johnson, a retired Senior Special Agent and Forensic Document Examiner for ICE.  The Johnson affidavit explained that errors may result from USCIS or DHS records searches. As a result, the "fact that a record was not found does not necessarily mean an individual is not work authorized or does not have legal status."  App. at 732.  Based on this affidavit, Split Rail argued that ICE's Certificates were not reliable evidence of the employees' unauthorized status.  Split Rail also noted it had sent requests for production to ICE, asking for evidence relating to any search for records performed on the nine individuals, but ICE declined to produce any evidence, claiming it was protected under a "law enforcement privilege."  *Id.* at 526.  Split Rail did not present evidence to contest the two investigation reports.

b.  *ALJ's summary decision*

The ALJ granted summary decision for ICE.  Although the ALJ's opinion did not separately analyze the employees' unauthorized status and Split Rail's constructive knowledge, it concluded Split Rail failed to raise an issue of material fact and that ICE was entitled to summary decision.

First, the ALJ acknowledged that "it is possible for errors to occur in government database searches" for the reasons reflected in the Johnson affidavit, but noted "[t]his is precisely the reason why the [NSD] itself extends the opportunity to the employer and the

- 31 -

employee to challenge the government's preliminary findings and to present alternative documentation sufficient to establish the individual's eligibility for employment." *Id.* at 802-03. Despite this opportunity, Split Rail failed to require its employees to present I-9 documentation (other than the documentation they originally presented when hired) and failed to offer such documentation to challenge ICE's evidence of unauthorized status before the ALJ. The ALJ further noted ICE did not rely solely on the NSD's summary that the numbers on the documents presented by the nine employees either did not exist or belonged to other individuals; it offered the Certificates and the two investigation reports.

Second, the ALJ also concluded Split Rail had constructive knowledge of the employees' unauthorized status. The ALJ reasoned the two NSDs provided Split Rail with notice that the named employees were suspected to be unauthorized and created a duty to examine additional I-9 documentation from each employee. He held the re-verification efforts described by Mr. Barenberg in his letter were inadequate. The letter indicated that, rather than further examining List A, B, or C documents from the Count Two employees to confirm their I-9 authorization, Split Rail gathered indicia of authorization unrecognized by the I-9 system to contest unauthorized status. The ALJ concluded those re-verification efforts were inadequate and that Split Rail accordingly had constructive knowledge. Finally, the ALJ rejected Split Rail's characterization of the OSC letter, concluding it consisted only of "a generic recital of nondiscrimination principles" and "patently [did] not tell [Split Rail] that the company [wa]s free to disregard the government's NSD." *Id.* at 802.

- 32 -

3. **Analysis**

Because Split Rail failed to rebut the government's prima facie showing that its employees were unauthorized and also failed to negate the government's prima facie showing of constructive knowledge, we agree with the ALJ's conclusion that ICE was entitled to a summary decision.

    a. *Unauthorized status*

As noted above, it is not clear whether Split Rail has raised a separate argument challenging the unauthorized status element of its Count Two violation. It argues the ALJ erred in holding that it had constructive knowledge based on the NSDs when "OCAHO's own precedents hold that [NSDs] alone do not establish unauthorized status." Pet. Br. at 44.[13] The latter part of this disjointed argument appears to challenge the ALJ's determination of the employees' unauthorized status. The ALJ, however, did not rely on the NSDs to find unauthorized status. It relied on the computer search Certificates and uncontested investigation reports.

      i. <u>Challenge to computer searches</u>

---

[13] Notably, each of the cases cited by Split Rail addresses civil penalty assessments under § 1324a(e)(5), not liability for a knowing-continue-to-employ violation under § 1324a(a)(2). *See United States v. Romans Racing Stables, Inc.*, 11 OCAHO 1230, 2014 WL 5478350, at *3 (2014); *United States v. Platinum Builders of Cent. Fla.*, 10 OCAHO 1199, 2013 WL 4631839, at *8 (2013); *United States v. Nat'l Envtl. Inc.*, 10 OCAHO 1197, 2013 WL 4502692, at *4-5 (2013).

ICE's presentation of the Certificates to the ALJ showed that computer searches of *three* centralized records systems revealed the employees were unauthorized.[14] The Certificates stated that the government maintains "centralized records relating to immigrant aliens who entered the United States on or after June 30, 1924, to nonimmigrant aliens who entered on or after June 30, 1948, and a centralized index of all persons naturalized on or after September 27, 1906." *See, e.g.*, App. at 231. The Certificates then stated as to each employee, "[N]o record was found to exist indicating that the [employee] obtained permission at any time . . . for legal immigrant status or admission in the United States." *Id.* ICE therefore made a prima facie showing that the employees were unauthorized.[15]

Split Rail attempted to challenge the government's computer records search and results. But, like the employers' arguments in *Mester* and *New El Rey*, the Johnson affidavit Split Rail proffered presented only general allegations that the government's

---

[14] Because the Ninth Circuit and OCAHO have relied on unauthorized status established by a search of one computer system, we find that ICE's search of three databases supports the reasonableness of its results. *See, e.g.*, *New El Rey,* 925 F.2d at 1154-55 (describing "computer checks on the Central Index System"); *Mester*, 879 F.2d at 566 ("The INS relied on a computer search of its records system that revealed the false green card."); *Horno MSJ*, 11 OCAHO 1247, 2015 WL 1746681, at *9 (2015) (discussing unauthorized status based on the government's proffered CIS printouts).

[15] This is particularly true because ICE's burden in a civil adjudication is a preponderance of the evidence. 8 U.S.C. § 1324a(e)(3)(C).

records system was unreliable.[16]  Split Rail alleged no specific facts sufficient to prove

the government's findings regarding its nine employees were incorrect.[17]

ii. Rebuttal evidence

Split Rail also did not provide any documents listed in § 1324a(b)(1)(B)-(D) to

rebut the government's showing that the employees were unauthorized.  Specifically, it

did not examine or produce any alternative List A, B, and/or C documents for any of the

nine employees.  Instead, it orally asked its employees to confirm they were authorized

and inquired whether they had bank accounts, cars, homes, mortgages, driver's licenses,

or worker's compensation claims.  These efforts did not rebut the government's prima

---

[16] Split Rail complains it was precluded from obtaining specific evidence about the accuracy of the database searches because ICE asserted that the law enforcement privilege protected its data and methodology.  Split Rail has forfeited this issue.  The record does not show that Split Rail sought to compel this discovery, 28 C.F.R. § 68.28(a)(3), or to obtain a ruling regarding applicability of the privilege.  Nor has it presented arguments the privilege should not apply.  *See e.g.*, *In re Basic Research, LLC*, FTC No. 9318, 2004 WL 2682822, at \*6 (Nov. 3, 2004) (explaining the law enforcement privilege may be outweighed by showing necessity sufficient to outweigh the adverse effects of revealing law enforcement techniques or sources); *see also United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981).

[17] Split Rail argues that some Certificates list names different from those listed in the NSDs or the Amended Complaint.  This is a red herring.  Although Split Rail provides no examples of any discrepancy, our review shows that three of the nine employees' names on the NSDs or Amended Complaint vary only slightly (*e.g.*, omission of a maternal surname) from the names listed on the Certificates.  Any such difference, however, is immaterial because the names and dates of birth on each Certificate exactly match the names and dates of birth listed on the respective employees' I-9 forms or the copies of the employees' government-issued permanent resident cards attached to the I-9 forms.  Split Rail does not contest that ICE relied on the employee information from the I-9 forms to perform the database searches.  Split Rail's mismatched names argument therefore lacks merit.

facie showing of unauthorized status under the statute and are otherwise unpersuasive to establish that the employees were legally authorized for employment. Because the evidence Split Rail proffered is unpersuasive, we need not decide whether unauthorized status may be rebutted in a manner other than proffering the appropriate IRCA documentation or challenging the computer records search and its results.

The results of the government's database searches established a prima facie showing of unauthorized status. Split Rail did not adequately challenge those results or produce sufficient evidence to rebut the prima facie showing. Thus, we agree with the ALJ that there is no genuine issue of material fact that the employees are unauthorized as a matter of law. The ALJ properly granted summary decision for ICE on this issue.

b. *Constructive knowledge*

The government established a prima facie showing that Split Rail had constructive knowledge of its employees' unauthorized status by showing that Split Rail failed to respond to the NSDs with the documentation required by the statute.

The 2009 NSD first put Split Rail on notice that the listed employees were suspected to be unauthorized. The 2011 NSD then gave additional, detailed notice that nine of the same employees were suspected to be unauthorized.

Before the ALJ, Split Rail did not successfully challenge the sufficiency of the NSDs or demonstrate that it had responded to the NSDs in the manner required by the statute, and thus failed to rebut the government's prima facie showing that it had constructive knowledge its employees were unauthorized. The ALJ properly concluded the government had proved constructive knowledge.

i. Challenges to the NSDs

Split Rail's challenges to the sufficiency of the NSDs are unpersuasive. Split Rail specifically argues that the 2009 and 2011 NSDs lacked sufficient specificity to impart constructive notice. We disagree.

First, Split Rail attempts to distinguish its case from the constructive knowledge imputed to the employer in *New El Rey* by arguing "the employer [there] was actually informed which documents were suspect." Pet. Br. at 48. But both the 2009 and 2011 NSD stated, "the documentation previously provided to you for these employees does not satisfy the Form I-9 employment eligibility verification requirements." *Id.* at 152. The 2011 NSD then provided even more specificity than the 2009 NSD, indicating whether an I-551 stamp and/or a social security card was suspect as to each named employee. App. at 152-53.

Moreover, the information in the notice sent to the employer in *New El Rey* was almost identical to the 2009 and 2011 NSDs sent to Split Rail. *See New El Rey*, 925 F.2d at 1155. Based on this information, the Ninth Circuit determined the employer was "provided with specific, detailed information." *Id.* at 1158. "The INS told it whom it considered unauthorized and why. Under these circumstances the ALJ properly found that a constructive notice standard" applied. *Id.* We reach the same conclusion here.

Split Rail also argues its NSDs were different from the NSD in *New El Rey* because they failed to specify "what Split Rail must do." Pet. Br. at 49. But both of Split Rail's NSDs clearly stated:

> Unless the above employee(s) present valid identification and employment eligibility documentation acceptable for completing the Form I-9 other than the documentation previously submitted to you, they are considered by ICE to be unauthorized to work in the United States.

App. at 147, 153. Although "specific directions from [ICE] would have been helpful, we do not believe they were necessary" to place Split Rail on constructive notice. *New El Rey*, 925 F.2d at 1159. As in *New El Rey*, "the letter [here] clearly told [Split Rail] that since the documents the employees had provided were invalid, the listed employees had to provide other documentation." *Id.*

Second, Split Rail argues the NSDs failed to specify "which databases had been searched, and by whom." Pet. Br. at 49. But the regulations only require a Warning Notice, or NSD, to "contain a statement of the basis for the violations and the statutory provisions alleged to have been violated"—not how ICE conducted its investigation. 8 C.F.R. § 274a.9(c).

Thus, the 2009 and 2011 NSDs constituted the exact type of "facts and circumstances" to impute knowledge that is referenced in the relevant regulation: both made "information available to [the employer] that would indicate that the alien is not authorized to work." 8 C.F.R. § 274a.1(*l*)(1)(ii).

ii. Rebuttal evidence

Split Rail also failed to negate the government's prima facie showing of constructive knowledge by demonstrating its response to the NSDs was to re-verify its employees consistent with § 1324a(b)(1)(B)-(D). Because the NSDs were sufficient to impart constructive knowledge, Split Rail's receipt of the NSDs shifted the burden to

- 38 -

Split Rail to rebut that it knowingly continued to employ unauthorized employees. To do so, and successfully avoid imputation of constructive knowledge by deliberately failing to investigate suspicious circumstances, *Mester*, 879 F.2d at 567 (citing *Jewell*, 532 F.2d 697), it was required to respond to the NSD in the manner contemplated by the statute.

As outlined above, the statute contemplates that Split Rail must examine List A, B, and/or C documents other than those originally provided by the employees to re-establish their identity and work authorization. Both the 2009 and 2011 NSDs accordingly stated: "Unless the above employee(s) present valid identification and employment eligibility documentation *acceptable for completing the Form I-9*, other than the documentation previously submitted to you, they are considered by ICE to be unauthorized to work in the United States." App. at 147, 153 (emphasis added). Split Rail's attempts to verify the status of these employees by other means were insufficient to satisfy its burden.[18]

_____

[18] Split Rail argues the ALJ overstated its re-verification obligations to negate a finding of constructive knowledge, citing *Collins Foods International, Inc. v. INS*, 948 F.2d 549 (9th Cir. 1991). In *Collins*, the Ninth Circuit reversed the ALJ's finding that an employer committed a knowing-hire violation with constructive knowledge its employee was unauthorized because the employer satisfied its verification obligation by examining documents, which reasonably appeared on their face to be genuine, and had no obligation to ascertain the legitimacy of those documents. *Id.* at 554.

But *Collins* involved a knowing-hire violation, not, as here, a knowing-continue-to-employ violation. The *Collins* opinion highlighted this key difference and specifically distinguished *Mester* and *New El Rey*, which were knowing-continue-to-employ violations. The court explained that the employers in *Mester* and *New El Rey* had inadequately responded to "positive information"—that is, Warning Notices—from the INS that certain employees were unauthorized, which equated to "willful blindness," or constructive knowledge. *Id.* at 555. Split Rail's citation to *Collins* is unpersuasive for the same reason. Like *Mester* and *New El Rey*, Count Two involves a knowing-continue-to-employ violation, and Split Rail received "positive information" in the form of two NSDs.

Split Rail's response to the 2009 NSD was to orally ask its employees to affirm they were authorized. The same inadequate employer response occurred in *New El Rey*. In that case, the INS charged an employer with two counts of knowingly continuing to employ unauthorized aliens in violation of § 1324a(a)(2), and the ALJ imposed fines. 925 F.2d at 1155. The Ninth Circuit emphasized that, "[i]n response to the INS letter insisting that the employees 'provide valid employment authorization,' [the employer] merely asked its employees whether their cards were valid." *Id.* at 1159. When the employees said yes, the employer "relied on their self-serving statements without requiring anything further from the employees, apparently assuming that the INS must have made a mistake." *Id.* The Ninth Circuit affirmed the ALJ's summary decision, concluding the employer had constructive knowledge that the two employees were unauthorized. *Id.*

Split Rail's response to the 2011 NSD also was inadequate. Its inquiries into whether the listed employees had bank accounts, cars, homes, mortgages, driver's licenses, or worker's compensation claims are beside the point. The IRCA does not recognize these indicia as establishing identity or employment eligibility. Sections 1324a(b)(1)(B)-(D), the "Lists of Acceptable Documents" instructions page accompanying the I-9 form, and 8 C.F.R. § 274a.2(b)(1)(v) list the only documents the employer may examine to establish the employee's identity and eligibility under the statute. We agree with the ALJ that "employers are not at liberty to create their own alternative employment eligibility verification systems; they are obligated to conform to the one that Congress enacted." App. at 807.

In sum, the government demonstrated a prima facie showing of constructive knowledge with evidence that Split Rail, after being put on notice by the NSDs, had failed to re-verify the named employees' status in the manner the law requires. *See New El Rey*, 925 F.2d at 1158-59; *Aramark*, 530 F.3d at 828; *Noel Plastering*, 15 F.3d 1088, at *1; *Aid Maint. Co.*, 7 OCAHO 951, 1997 WL 1051451, at *4-5 (collecting cases). Before the ALJ, Split Rail did not dispute that it failed to re-verify the employees' status by examining and presenting new documents consistent with the IRCA. Because Split Rail's response did not follow the statute, and did not otherwise evidence "*any* steps sufficient to demonstrate a good faith attempt to comply with the statute," *New El Rey*, 925 F.2d at 1159 (emphasis in original),[19] Split Rail has demonstrated the type of "deliberate failure to investigate suspicious circumstances" the Ninth Circuit envisioned to impute constructive knowledge. *Mester*, 879 F.2d at 567 (citing *Jewell*, 532 F.2d 697).

We agree with the ALJ that there is no genuine issue of material fact that Split Rail had constructive knowledge of its employees' unauthorized status and that summary decision was proper.

---

[19] Split Rail argues its re-verification efforts were made in good faith because it lacked the "willful blindness," "conscious disregard," or "reckless or purposeful abdication" of verification responsibilities that are typically associated with the definition of constructive knowledge. It also argues that employers in past OCAHO decisions acted more egregiously. Pet. Br. at 25, 41.

But Split Rail overstates the scope of good faith as it applies to constructive knowledge. *New El Rey* stated an employer may rely on good faith only in terms of efforts made to comply *with the statute*. 925 F.2d at 1159. Because the indicia Split Rail collected to show its employees' status in response to the NSDs had no basis in the statute, its good faith arguments are unpersuasive.

### iii. Split Rail's other arguments

Split Rail's other arguments disputing the government's showing of constructive knowledge are not persuasive.

#### 1) OSC letter

Split Rail characterizes the OSC letter as advising Split Rail it could "continue to rely on facially valid [I-9] documents even in response to a Notice of Suspect Documents" because examining such facially valid documents would violate the anti-discrimination provision of the IRCA. Pet. Br. at 14; 35-36. We disagree.

The OSC letter did not negate constructive knowledge. It did not advise Split Rail that it could continue to rely on the I-9 documents originally submitted by the employees at the time of hiring and effectively ignore the 2009 NSD. Rather, it explained that the IRCA's anti-discrimination provision "prohibits the request for specific documents or the rejection of documents during the employment eligibility verification process *with the intent to discriminate*." App. at 696 (emphasis added). It then specified, "it has been long recognized that action by an employer taken for reasons other than an intent to discriminate does not constitute an unfair employment practice" and that an NSD "may provide a non-discriminatory reason behind the decision to re-verify an employee's employment eligibility." *Id.* If anything, that language complemented the NSD. Moreover, the OSC letter stated it "cannot provide an advisory opinion on any particular instance of alleged discrimination or on any set of facts involving a particular individual or entity." *Id.*

- 42 -

### 2) Certificates and investigation reports

Split Rail argues ICE failed to respond to its requests for production about the nature of the searches underlying the Certificates[20] and that the Certificates and investigation reports were produced only after the NSDs and complaint were served.

The problem with this argument is that the ALJ did not rely on the Certificates or investigation reports in concluding Split Rail had constructive knowledge. As explained above, the ALJ relied on this evidence to find the employees' unauthorized status. The ALJ's finding of constructive knowledge turned on the notice imparted by the NSDs and Split Rail's failure to produce evidence to the contrary. *Id.* at 805 (stating the main issue regarding constructive knowledge was "whether an employer that receives a second *NSD* identifying the same individuals whose documents were put in issue almost two years earlier may continue to rely . . . on the verbal assurances of the employees and the company's own self-designated 'evidence' rather than requiring the employees to present documents other than those they had previously produced, as directed by the government" (emphasis added)).

---

[20] As noted above, any challenge to ICE's assertion of the law enforcement privilege has been forfeited because Split Rail did not seek to compel this discovery from the ALJ or otherwise seek to obtain a ruling regarding applicability of the privilege. *See supra* note 16.

### III. **CONCLUSION**

For the foregoing reasons, we deny Split Rail's petition for review.[21]

---

[21] In light of this disposition, we deny as moot Split Rail's motion to strike Exhibits G-10 and G-17 from the record. Our analysis does not rely on either document. Split Rail's motion to supplement the record with a more legible copy of Exhibit R-6 is also denied because a legible copy can be found in the Appendix at 586.

Department of Homeland Security
U.S. Citizenship and Immigration Services

# Form I-9, Employment
# Eligibility Verification

## Instructions
### Read all instructions carefully before completing this form.

**Anti-Discrimination Notice.** It is illegal to discriminate against any individual (other than an alien not authorized to work in the United States) in hiring, discharging, or recruiting or referring for a fee because of that individual's national origin or citizenship status. It is illegal to discriminate against work-authorized individuals. Employers **CANNOT** specify which document(s) they will accept from an employee. The refusal to hire an individual because the documents presented have a future expiration date may also constitute illegal discrimination. For more information, call the Office of Special Counsel for Immigration Related Unfair Employment Practices at 1-800-255-8155.

### What Is the Purpose of This Form?

The purpose of this form is to document that each new employee (both citizen and noncitizen) hired after November 6, 1986, is authorized to work in the United States.

### When Should Form I-9 Be Used?

All employees (citizens and noncitizens) hired after November 6, 1986, and working in the United States must complete Form I-9.

### Filling Out Form I-9

**Section 1, Employee**

This part of the form must be completed no later than the time of hire, which is the actual beginning of employment. Providing the Social Security Number is voluntary, except for employees hired by employers participating in the USCIS Electronic Employment Eligibility Verification Program (E-Verify). **The employer is responsible for ensuring that Section 1 is timely and properly completed.**

**Noncitizen nationals of the United States** are persons born in American Samoa, certain former citizens of the former Trust Territory of the Pacific Islands, and certain children of noncitizen nationals born abroad.

**Employers should note** the work authorization expiration date (if any) shown in **Section 1**. For employees who indicate an employment authorization expiration date in **Section 1**, employers are required to reverify employment authorization for employment on or before the date shown. Note that some employees may leave the expiration date blank if they are aliens whose work authorization does not expire (e.g., asylees, refugees, certain citizens of the Federated States of Micronesia or the Republic of the Marshall Islands). For such employees, reverification does not apply unless they choose to present

in Section 2 evidence of employment authorization that contains an expiration date (e.g., Employment Authorization Document (Form I-766)).

**Preparer/Translator Certification**

The Preparer/Translator Certification must be completed if **Section 1** is prepared by a person other than the employee. A preparer/translator may be used only when the employee is unable to complete **Section 1** on his or her own. However, the employee must still sign **Section 1** personally.

**Section 2, Employer**

For the purpose of completing this form, the term "employer" means all employers including those recruiters and referrers for a fee who are agricultural associations, agricultural employers, or farm labor contractors. Employers must complete **Section 2** by examining evidence of identity and employment authorization within three business days of the date employment begins. However, if an employer hires an individual for less than three business days, **Section 2** must be completed at the time employment begins. Employers cannot specify which document(s) listed on the last page of Form I-9 employees present to establish identity and employment authorization. Employees may present any List A document **OR** a combination of a List B and a List C document.

If an employee is unable to present a required document (or documents), the employee must present an acceptable receipt in lieu of a document listed on the last page of this form. Receipts showing that a person has applied for an initial grant of employment authorization, or for renewal of employment authorization, are not acceptable. Employees must present receipts within three business days of the date employment begins and must present valid replacement documents within 90 days or other specified time.

**Employers must record in Section 2:**

1. Document title;
2. Issuing authority;
3. Document number;
4. Expiration date, if any; and
5. The date employment begins.

Employers must sign and date the certification in **Section 2**. Employees must present original documents. Employers may, but are not required to, photocopy the document(s) presented. If photocopies are made, they must be made for all new hires. Photocopies may only be used for the verification process and must be retained with Form I-9. **Employers are still responsible for completing and retaining Form I-9.**

For more detailed information, you may refer to the *USCIS Handbook for Employers* (Form M-274). You may obtain the handbook using the contact information found under the header "USCIS Forms and Information."

### Section 3, Updating and Reverification

Employers must complete **Section 3** when updating and/or reverifying Form I-9. Employers must reverify employment authorization of their employees on or before the work authorization expiration date recorded in **Section 1** (if any). Employers **CANNOT** specify which document(s) they will accept from an employee.

A. If an employee's name has changed at the time this form is being updated/reverified, complete Block A.

B. If an employee is rehired within three years of the date this form was originally completed and the employee is still authorized to be employed on the same basis as previously indicated on this form (updating), complete Block B and the signature block.

C. If an employee is rehired within three years of the date this form was originally completed and the employee's work authorization has expired **or** if a current employee's work authorization is about to expire (reverification), complete Block B; and:

  1. Examine any document that reflects the employee is authorized to work in the United States (see List A or C);
  2. Record the document title, document number, and expiration date (if any) in Block C; and
  3. Complete the signature block.

Note that for reverification purposes, employers have the option of completing a new Form I-9 instead of completing **Section 3.**

### What Is the Filing Fee?

There is no associated filing fee for completing Form I-9. This form is not filed with USCIS or any government agency. Form I-9 must be retained by the employer and made available for inspection by U.S. Government officials as specified in the Privacy Act Notice below.

### USCIS Forms and Information

To order USCIS forms, you can download them from our website at www.uscis.gov/forms or call our toll-free number at 1-800-870-3676. You can obtain information about Form I-9 from our website at www.uscis.gov or by calling 1-888-464-4218.

Information about E-Verify, a free and voluntary program that allows participating employers to electronically verify the employment eligibility of their newly hired employees, can be obtained from our website at www.uscis.gov/e-verify or by calling 1-888-464-4218.

General information on immigration laws, regulations, and procedures can be obtained by telephoning our National Customer Service Center at 1-800-375-5283 or visiting our Internet website at www.uscis.gov.

### Photocopying and Retaining Form I-9

A blank Form I-9 may be reproduced, provided both sides are copied. The Instructions must be available to all employees completing this form. Employers must retain completed Form I-9s for three years after the date of hire or one year after the date employment ends, whichever is later.

Form I-9 may be signed and retained electronically, as authorized in Department of Homeland Security regulations at 8 CFR 274a.2.

### Privacy Act Notice

The authority for collecting this information is the Immigration Reform and Control Act of 1986, Pub. L. 99-603 (8 USC 1324a).

This information is for employers to verify the eligibility of individuals for employment to preclude the unlawful hiring, or recruiting or referring for a fee, of aliens who are not authorized to work in the United States.

This information will be used by employers as a record of their basis for determining eligibility of an employee to work in the United States. The form will be kept by the employer and made available for inspection by authorized officials of the Department of Homeland Security, Department of Labor, and Office of Special Counsel for Immigration-Related Unfair Employment Practices.

Submission of the information required in this form is voluntary. However, an individual may not begin employment unless this form is completed, since employers are subject to civil or criminal penalties if they do not comply with the Immigration Reform and Control Act of 1986.

## Paperwork Reduction Act

An agency may not conduct or sponsor an information collection and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. The public reporting burden for this collection of information is estimated at 12 minutes per response, including the time for reviewing instructions and completing and submitting the form. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to: U.S. Citizenship and Immigration Services, Regulatory Management Division, 111 Massachusetts Avenue, N.W., 3rd Floor, Suite 3008, Washington, DC 20529-2210. OMB No. 1615-0047. **Do not mail your completed Form I-9 to this address.**

Department of Homeland Security
U.S. Citizenship and Immigration Services

# Form I-9, Employment Eligibility Verification

**Read instructions carefully before completing this form. The instructions must be available during completion of this form.**

**ANTI-DISCRIMINATION NOTICE:** It is illegal to discriminate against work-authorized individuals. Employers **CANNOT** specify which document(s) they will accept from an employee. The refusal to hire an individual because the documents have a future expiration date may also constitute illegal discrimination.

## Section 1. Employee Information and Verification *(To be completed and signed by employee at the time employment begins.)*

| Print Name: Last | First | Middle Initial | Maiden Name |
|---|---|---|---|
| | | | |

| Address *(Street Name and Number)* | Apt. # | Date of Birth *(month/day/year)* |
|---|---|---|
| | | |

| City | State | Zip Code | Social Security # |
|---|---|---|---|
| | | | |

**I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.**

I attest, under penalty of perjury, that I am (check one of the following):

- [ ] A citizen of the United States
- [ ] A noncitizen national of the United States (see instructions)
- [ ] A lawful permanent resident (Alien #) _____
- [ ] An alien authorized to work (Alien # or Admission #) _____
  until (expiration date, if applicable - *month/day/year*) _____

| Employee's Signature | Date *(month/day/year)* |
|---|---|
| | |

**Preparer and/or Translator Certification** *(To be completed and signed if Section 1 is prepared by a person other than the employee.)* I attest, under penalty of perjury, that I have assisted in the completion of this form and that to the best of my knowledge the information is true and correct.

| Preparer's/Translator's Signature | Print Name |
|---|---|
| | |

| Address *(Street Name and Number, City, State, Zip Code)* | Date *(month/day/year)* |
|---|---|
| | |

## Section 2. Employer Review and Verification *(To be completed and signed by employer. Examine one document from List A OR examine one document from List B and one from List C, as listed on the reverse of this form, and record the title, number, and expiration date, if any, of the document(s).)*

| List A | OR | List B | AND | List C |
|---|---|---|---|---|
| Document title: _____ | | _____ | | _____ |
| Issuing authority: _____ | | _____ | | _____ |
| Document #: _____ | | _____ | | _____ |
| Expiration Date *(if any)*: _____ | | _____ | | _____ |
| Document #: _____ | | _____ | | _____ |
| Expiration Date *(if any)*: _____ | | _____ | | |

**CERTIFICATION: I attest, under penalty of perjury, that I have examined the document(s) presented by the above-named employee, that the above-listed document(s) appear to be genuine and to relate to the employee named, that the employee began employment on** *(month/day/year)* _____ **and that to the best of my knowledge the employee is authorized to work in the United States. (State employment agencies may omit the date the employee began employment.)**

| Signature of Employer or Authorized Representative | Print Name | Title |
|---|---|---|
| | | |

| Business or Organization Name and Address *(Street Name and Number, City, State, Zip Code)* | Date *(month/day/year)* |
|---|---|
| | |

## Section 3. Updating and Reverification *(To be completed and signed by employer.)*

| A. New Name *(if applicable)* | B. Date of Rehire *(month/day/year)* *(if applicable)* |
|---|---|
| | |

C. If employee's previous grant of work authorization has expired, provide the information below for the document that establishes current employment authorization.

| Document Title: _____ | Document #: _____ | Expiration Date *(if any)*: _____ |
|---|---|---|

**I attest, under penalty of perjury, that to the best of my knowledge, this employee is authorized to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.**

| Signature of Employer or Authorized Representative | Date *(month/day/year)* |
|---|---|
| | |

# LISTS OF ACCEPTABLE DOCUMENTS
### All documents must be unexpired

| LIST A | LIST B | LIST C |
|---|---|---|
| **Documents that Establish Both Identity and Employment Authorization** OR | **Documents that Establish Identity** AND | **Documents that Establish Employment Authorization** |
| 1. U.S. Passport or U.S. Passport Card | 1. Driver's license or ID card issued by a State or outlying possession of the United States provided it contains a photograph or information such as name, date of birth, gender, height, eye color, and address | 1. Social Security Account Number card other than one that specifies on the face that the issuance of the card does not authorize employment in the United States |
| 2. Permanent Resident Card or Alien Registration Receipt Card (Form I-551) | | 2. Certification of Birth Abroad issued by the Department of State (Form FS-545) |
| 3. Foreign passport that contains a temporary I-551 stamp or temporary I-551 printed notation on a machine-readable immigrant visa | 2. ID card issued by federal, state or local government agencies or entities, provided it contains a photograph or information such as name, date of birth, gender, height, eye color, and address | 3. Certification of Report of Birth issued by the Department of State (Form DS-1350) |
| 4. Employment Authorization Document that contains a photograph (Form I-766) | 3. School ID card with a photograph | |
| | 4. Voter's registration card | 4. Original or certified copy of birth certificate issued by a State, county, municipal authority, or territory of the United States bearing an official seal |
| 5. In the case of a nonimmigrant alien authorized to work for a specific employer incident to status, a foreign passport with Form I-94 or Form I-94A bearing the same name as the passport and containing an endorsement of the alien's nonimmigrant status, as long as the period of endorsement has not yet expired and the proposed employment is not in conflict with any restrictions or limitations identified on the form | 5. U.S. Military card or draft record | |
| | 6. Military dependent's ID card | |
| | 7. U.S. Coast Guard Merchant Mariner Card | 5. Native American tribal document |
| | 8. Native American tribal document | 6. U.S. Citizen ID Card (Form I-197) |
| | 9. Driver's license issued by a Canadian government authority | |
| | **For persons under age 18 who are unable to present a document listed above:** | 7. Identification Card for Use of Resident Citizen in the United States (Form I-179) |
| 6. Passport from the Federated States of Micronesia (FSM) or the Republic of the Marshall Islands (RMI) with Form I-94 or Form I-94A indicating nonimmigrant admission under the Compact of Free Association Between the United States and the FSM or RMI | 10. School record or report card | 8. Employment authorization document issued by the Department of Homeland Security |
| | 11. Clinic, doctor, or hospital record | |
| | 12. Day-care or nursery school record | |

## Illustrations of many of these documents appear in Part 8 of the Handbook for Employers (M-274)