Filed 4/4/25  Melgoza v. Salazar CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARIA MELGOZA, | B322728 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV02513) |
| v. | |
| RAMON SALAZAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Bruce Benjamin for Defendant and Appellant.

Employee Justice Legal Group, PC, Kaveh S. Elihu, Daniel J. Friedman, and Steven Berkowitz for Plaintiff and Respondent.

* * * * * *

Following a bench trial, a former employee was awarded, as pertinent here, $84,616 in lost wages for age discrimination and wrongful termination.  The employer argues that the lost wages are attributable to the period of time *after* the employer knew the former employee was ineligible under federal law to work in the United States, such that federal law precludes the award of any damages covering that period under *Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407 (*Salas*).  Because the evidence at trial does not compel a finding that this preemption defense applies and thereby forecloses the award of damages, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts[1]

Ramon Salazar (Salazar) is the sole proprietor of a small Mexican restaurant in Long Beach, California called "Cinco de Mayo."

In August 2013, he hired Maria Melgoza (plaintiff) as a cook.  At that time, Salazar knew plaintiff was born in Mexico but did not ask plaintiff to verify her eligibility for employment.  Several of the restaurant's other employees were also born in Mexico.

During her employment, plaintiff repeatedly asked for raises and suggested that she share in the tips earned by the waitresses.  Each time, Salazar declined plaintiff's requests, telling her that "the waitresses were young and pretty," while she was "invisible," "used" and "old."  After Salazar was "fined" in a lawsuit brought by a different employee for failing to maintain

---

[1]  Consistent with the substantial evidence standard of review we apply, the facts are recounted in the light most favorable to the verdict.

proper employment records, Salazar asked all of the restaurant's employees to produce a social security card. Every employee except plaintiff produced a card, although Salazar did nothing to verify the authenticity of those cards. Plaintiff did not produce a card after three months, so Salazar told her in January 2018 that "there was not going to be more work" for her.

Also during plaintiff's employment, Salazar required plaintiff to work more than 40 hours per week a few weeks per month, and also did not provide required meal and rest breaks. Salazar paid plaintiff her wages in cash, did not maintain employment records, and did not produce any such records when asked.

## II.  **Procedural Background**

In January 2019, plaintiff sued Salazar for (1) age discrimination, in violation of California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.); (2) wrongful termination in violation of public policy; (3) various wage-and-hour violations under the Labor Code, including (a) failure to pay wages for overtime as well as premiums for missed meal and rest breaks, (b) failure to provide itemized wage statements, and (c) waiting time penalties; and (4) failure to permit inspection of personnel and payroll records.[2]

---

**2**    Plaintiff also asserted claims for (1) gender and disability discrimination, under FEHA; (2) retaliation, under FEHA; (3) failure to prevent discrimination and retaliation, under FEHA; (4) failure to provide reasonable accommodations, under FEHA; (5) failure to engage in a good faith interactive process, under FEHA; (6) declaratory judgment; (7) retaliation, under Labor Code section 98.6; (8) retaliation, under Labor Code sections 1102.5 and 1102.6; and (9) unfair competition. The trial court

3

The matter proceeded to a two-day bench trial in November 2021. Both plaintiff and Salazar testified, offering conflicting accounts: Plaintiff testified to Salazar's age-related comments and to her overtime and missed meal and rest breaks, while Salazar testified that he stopped employing plaintiff because she failed to produce a social security card and that none of his employees had ever worked overtime or missed a meal or rest break.

After entertaining post-trial briefing and responses to its tentative ruling, the trial court issued a 13-page statement of decision. In that statement, the court found plaintiff's testimony more credible than Salazar's. On that basis, the court found that Salazar's refusal to give plaintiff a raise, his refusal to switch her to a waitress position, and his decision to terminate her were motivated by discrimination on the basis of age, and that Salazar's "assertion that he terminated [p]laintiff for her failure to provide a Social Security Number was pretextual" because he was "not concerned about actual compliance with immigration laws," as confirmed by his failure to make any "effort to verify the accuracy or legitimacy of the Social Security Numbers provided by other employees." On her age discrimination and wrongful termination claims, the court awarded plaintiff $84,616 in economic damages (all of which was attributable to lost wages after being terminated by Salazar) and $50,000 in noneconomic damages.[3] On the wage and hour claims, the court awarded a

_____

concluded that plaintiff either "abandoned" or did not prove these claims at trial, so they are not at issue in this appeal.

[3] The trial court relied on the calculation of economic damages set forth in plaintiff's post-trial briefing. That briefing calculated the $84,616 amount as being comprised of (1) $880 in

4

total of $24,207 in unpaid wages and penalties.[4]  On the failure to permit inspection claim, the court awarded $1,500.

On June 8, 2022, the court entered judgment for plaintiff in the amount of $160,323.  The judgment also declared that plaintiff was entitled to costs and attorney fees, but left the amount of those fees for future determination.

Salazar filed a timely notice of appeal.[5]

## DISCUSSION

Salazar argues that the trial court erred in awarding plaintiff $84,616 in economic damages because that amount is attributable entirely to "lost pay damages . . . for [the] period of time *after*" he discovered plaintiff's "ineligibility under federal

---

lost wages for the two weeks plaintiff was unemployed immediately after being terminated, (2) $32,856 in lost wages during the subsequent over-two-year period when she was working minimal hours at another restaurant, (3) $10,400 in lost wages during the subsequent one-year period when she worked more hours at that restaurant, and (4) $40,480 in lost wages during the subsequent two-year period when she again became unemployed.

[4]  That amount was calculated as $2,079 in unpaid overtime wages, $5,808 for missed meal breaks, $9,680 for missed rest breaks, a $4,000 penalty for failing to provide itemized wage statements, and $2,640 in waiting time penalties.

[5]  Thereafter, the court determined that plaintiff was entitled to $77,188.05 in attorney fees.  Because Salazar's challenge to the attorney fee award is contingent solely on him prevailing on the merits of the judgment, and because we have concluded that he does not so prevail, we have no occasion to address Salazar's further argument that plaintiff's award of attorney fees should be vacated.

5

law to work in the United States," such that the award of those damages under California law is preempted by federal law . (*Salas*, *supra*, 59 Cal.4th at p. 418.)[6]  To the extent Salazar's challenge entails the interpretation of law, our review is de novo (*Kaanaana v. Barrett Bus. Servs.* (2021) 11 Cal.5th 158, 165); to the extent he challenges the trial court's factual findings, we review for substantial evidence (*City of San Marcos v. Loma San Marcos, LLC* (2015) 234 Cal.App.4th 1045, 1053); and to the extent he challenges factual findings on which *he* bore the burden of proof, Salazar can prevail only if he establishes that the record compels a finding in his favor as a matter of law (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979).

Our Legislature has, in pertinent part, declared that, "[f]or purposes of enforcing state labor[ and] employment . . . laws, a person's immigration status is irrelevant to the issue of liability" (Lab. Code, § 1171.5, subd. (b)), and that "[a]ll protections, rights, and remedies available under state law . . . are available to all individuals regardless of immigration status who have . . . been employed[] in this state" (*id.*, subd. (a)).[7]  Notwithstanding this declaration, federal immigration law makes it "unlawful" for any employer "to continue to employ [an] alien in the United States knowing the alien is . . . an unauthorized alien with respect to

***

**6**　In his reply brief, Salazar for the first time challenges the sufficiency of the evidence underlying the trial court's finding of age discrimination.  By not raising this challenge in his opening brief, Salazar has waived this challenge.  (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 500.)

**7**　Our Legislature carved out "any reinstatement remedy prohibited by federal law" (Lab. Code, § 1171.5, subd. (a)), but reinstatement is not an issue in this case.

such employment." (8 U.S.C. § 1324a, subd. (a)(2); accord, *Hoffman Plastic Compounds, Inc. v. NLRB* (2002) 535 U.S. 137, 148 (*Hoffman*) ["if [an] alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker's undocumented status"].) In *Salas, supra*, 59 Cal.4th 407, our State's Supreme Court held that federal immigration law preempts section 1171.5 to a limited extent by "bar[ring] an award of lost pay damages under [state law] for any period of time *after* an employer's discovery of the employee's ineligibility under federal law to work in the United States." (*Id.* at p. 418.) In coming to this conclusion, *Salas* reasoned that "any state law award that compensates an unauthorized alien worker for loss of employment during the post-discovery period directly conflicts with the federal immigration law prohibition against continuing to employ workers whom the employer knows are unauthorized aliens." (*Id.* at p. 424.)

As *Salas* and federal immigration law make clear, however, an employer runs afoul of federal immigration law—and a damages award grounded in state law is thereby preempted— only if the employer "know[s]" the employee is not authorized to work in the United States. (8 U.S.C. § 1324a, subd. (a)(2); *Mester Manufacturing Co. v. INS* (9th Cir. 1989) 879 F.2d 561, 566 ["The INS must show . . . that the employer knowingly employed an unauthorized alien"]; *Hoffman, supra,* 535 U.S. at p. 148 [requiring knowledge of unlawful status].) Because federal preemption is an affirmative defense (*Roberts v. United Healthcare Services, Inc.* (2016) 2 Cal.App.5th 132, 148; *Morris B. Silver M.D., Inc. v. International Longshore & Warehouse etc.* (2016) 2 Cal.App.5th 793, 799), the party asserting that defense—

here, Salazar—bears the burden of proof. (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 945 ["as with any affirmative defense, the burden is on the defendant to prove all facts essential to each element of the defense"].) And where, as here, our task is to evaluate whether substantial evidence supports the trial court's determination that "the *Salas* rule barring post-termination damages does not affect the ultimate calculation of damages in [this] case," we must assess whether the evidence *compels* a finding that Salazar knew plaintiff was unauthorized to work in the United States.

The record does not compel such a finding. No evidence was adduced at trial regarding plaintiff's authorization to work in the United States.[8] There is also no evidence that federal immigration authorities had ever notified Salazar that plaintiff might not be authorized to work. At best, the evidence at trial established that Salazar knew plaintiff was born in Mexico, that he had asked plaintiff to produce a social security card, and that she did not do so in the three-month window Salazar provided. Although this may be sufficient to cause Salazar to suspect plaintiff might be unauthorized, Salazar never did any follow-up investigation and never ascertained whether plaintiff was unauthorized to work in the United States. Mere suspicion of a fact is not knowledge of a fact. (E.g., *People v. Riel* (2000) 22

---

8    Although plaintiff testified at trial that she was "not going to give a bad social security number," there is no evidence that she ever made this statement to Salazar; thus, while her testimony may have indicated at trial that plaintiff was not authorized to work, it does not support a finding that Salazar knew or otherwise discovered that fact prior to terminating her or even during the period for which she recovered damages. (*Salas, supra*, 59 Cal.4th at pp. 430-431.)

Cal.4th 1153, 1217 [attorney who "merely suspects" evidence is false does not "know" that it is]; *American Chemistry Council v. Office of Environmental Health Hazard Assessment* (2020) 55 Cal.App.5th 1113, 1142 [drawing distinction between chemicals "known" to cause cancer from those "merely suspected" of doing so].) Thus, plaintiff's failure to produce a social security card is not enough, by itself, to establish Salazar's knowledge that plaintiff was unauthorized to work—let alone enough to *compel* a finding of knowledge as a matter of law. (E.g., *Vasconcelo v. Miami Auto Max, Inc.* (S.D.Fla. July 2, 2018) 2018 U.S. Dist. Lexis 110887, *12 ["jury would not have reasonably inferred a lack of immigration status by [employee's] initial failure to produce his social security card" when asked to do so]; cf. *Split Rail Fence Co. v. United States* (10th Cir. 2017) 852 F.3d 1228, 1241 [employer who receives notice from federal immigration authorities that "an employee was suspected to be unauthorized" and who "fail[s] to take adequate steps to re-verify the individual's employment eligibility" charged with "constructive knowledge" of employee's unauthorized status]; *Salas, supra*, 59 Cal.4th at pp. 415, 431 [employer who "cho[oses] to look the other way" when employees present Social Security numbers on employment forms that are assigned to other people is "put on notice of employees' unauthorized status"].)

Because the record does not compel a finding that Salazar knew plaintiff was unauthorized to work, Salazar's *Salas*-based affirmative defense of preemption does not apply and the trial court accordingly did not err in declining to reduce plaintiff's economic damages to account for that affirmative defense.[9]

_____

[9] We accordingly have no need to consider in detail plaintiff's argument based on footnote 3 in *Salas, supra*, 59 Cal.4th at p.

**DISPOSITION**

The judgment is affirmed.  Plaintiff is entitled to her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, P.J.
HOFFSTADT

We concur:

_____, J.
 MOOR

_____, J.
 KIM (D.)

---

424.  Not only is this argument waived because it was raised for the first time at oral argument, but it is also rendered irrelevant by our holding:  The footnote suggests that an employee may still be entitled to damages when her "employer has *knowingly* hired or continued to employ an unauthorized alien in violation of federal immigration law" (*ibid.*), but we have concluded that the evidence does not compel a finding that Salazar continued to employ plaintiff while knowing she was unauthorized to work.

We also have no need to take judicial notice of the documents plaintiff proffers; we therefore deny her request to do so.